IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER RUSANOWSKY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1132 |
| | § | |
| THE CITY OF DALLAS, SGT. ROGER | § | |
| A. RUDOLF, Individually and in | § | |
| his official capacity as a Dallas Police | § | |
| Department Police Officer, | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallas.gov


7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:  214-670-3519
Facsimile:   214-670-0622

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.      SUMMARY OF MOTION................................................................................................1

II.     ARGUMENTS AND AUTHORITIES.........................................................................1

III.    CONCLUSION ............................................................................................................16

CERTIFICATE OF SERVICE ............................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Arizmendi v. Gabbert*, 919 F.3d 891 (5th Cir. 2019) .................................................................. 4, 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 2

*Bell v. Wolfish*, 441 U.S. 520 (1979) ............................................................................................. 5

*Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 11121361 (N.D. Tex. Jan. 30, 2015 ................ 8

*Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 2777373 (N.D. Tex. June 19, 2014) ............. 9

*Brown v. Lyford*, 243 F.3d 185 (5th Cir.2001) .............................................................................. 6

*Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489 (5th Cir. 2021) ......................................................... 4

*Carswell v. Camp*, No. 21-10171, 2022 WL 17335977 (5th Cir. Nov. 30, 2022) ........................ 2

*Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008) ............................................................................. 3

*Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015) ............................................................................... 7

*Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 2018
  WL 2317696 (N.D. Tex. May 22, 2018) ................................................................................ 8, 9

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir.2001) ..................................................................... 6

*Haggerty v. Tex. S. Univ.*, 391 F.3d 653 (5th Cir. 2004) ........................................................... 5, 6

*Harper v. City of Dallas, Tex.*, No. 3:14-CV-2647-M, 2017 WL 3674830 (N.D. Tex. Aug. 25,
  2017) .......................................................................................................................................... 9

*Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015) ................................................................. 12

*Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2019 WL 1957997 (N.D. Tex. May 2,
  2019) ........................................................................................................................ 5, 10, 18, 19

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) ................................................................................... 5

*Keller v. Fleming*, 952 F.3d 216 (5th Cir. 2020) .......................................................................... 4

*Luna v. Mullenix*, 773 F.3d 712 (5th Cir. 2014) ........................................................................... 3

*Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992) .......................................................................... 6

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) ......................................................... 4

*Nance v. Meeks*, No. 3:17-cv-1882-L-BN, 2018 WL 5624202 (N.D. Tex. Aug. 1, 2018) ........... 4

*O'Dwyer v. Nelson*, 310 F. App'x. 741 (5th Cir.2009) ...................................................... 7

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ............................................................. 15

*Parm v. Shumate*, 513 F.3d 135 (5th Cir. 2007) ........................................................... 6

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................. 2

*Pembaur v. Cincinnati*, 475 U.S. 469 (1986) ............................................................. 14

*Price v. Roark*, 256 F.3d 364 (5th Cir.2001) .............................................................. 5

*Roe v. Johnson Cnty., Texas*, No. 3:18-CV-2497-B-BN, 2021 WL 321967 (N.D. Tex. Feb. 1, 2021) ................................................................................................................... 3

*Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018) ............................................................. 7

*Seastrunk v. Entegris, Inc.*, No. 3:16-CV-2795-L, 2017 WL 6406627 (N.D. Tex. Dec. 15, 2017) 9

*Valderas v. City of Lubbock*, 937 F.3d 384 (5th Cir. 2019) .............................................. 3

*Whittington v. Maxwell*, 455 F. App'x. 450 (5th Cir.2011) ............................................. 7

## RULES

Fed.R.Civ.P. rule 26(b) ........................................................................................ 10

N.D.Tex. L. Civ. R. 7.1 ......................................................................................... 8

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

 Defendants City of Dallas (the "City") and Sgt. Roger A. Rudloff ("Sgt. Rudloff") file this their Response to Plaintiff's Motion for Leave to Conduct Limited Discovery (Doc. no. 30, "Motion") and would respectfully show the Court as follows:

## I.    SUMMARY OF MOTION

Plaintiff seeks leave from this Court to propound the type of onerous, open-ended discovery that qualified immunity is specifically designed to prevent. Rather than propose limited discovery narrowly tailored to the salient facts upon which this Court will need to determine whether Sgt. Rudloff violated clearly established law, Plaintiff improperly requests permission to open Sgt. Rudloff and the City to early discovery – much of which is objectionable even by Rule 26(b)'s broad standard.

Given that (1) Plaintiff violated this Court's Local Rules by never conferencing on the Motion; (2) Plaintiff was not only present during the entirety of the events at issue but, as his Complaint illustrates, actually documented them in real time; and (3) none of his requested interrogatory requests or requests for production meet the Fifth Circuit's standards for qualified immunity discovery, his Motion should denied.

## II.    ARGUMENTS AND AUTHORITIES

Plaintiff's section 1983 claims related to his arrest sound in alleged violations of his First and Fourth Amendment rights. *See generally*, Doc. no. 1. The gravamen of his claims is that he was arrested and charged with a crime, without probable cause, in retaliation for taking photographs of Sgt. Rudloff (and other law enforcement officers) unlawfully arresting protestors during the 2020 George Floyd protests. *Id.* ¶¶ 24-28.

Sgt. Rudloff has pled the defense of qualified immunity. *See* Doc. no. 23. "Qualified immunity balances two important interests—the need to hold public officials

1

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, (2009). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

As the Fifth Circuit has recently reminded litigants, "[t]he Supreme Court has repeatedly made clear that 'the driving force' behind qualified immunity is 'a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery,' and it has 'stressed the importance of resolving immunity questions at the *earliest possible stage in litigation*.'" *Carswell v. Camp*, No. 21-10171, 2022 WL 17335977, at *4 (5th Cir. Nov. 30, 2022) (quoting, 555 U.S. at 231 (emphasis in original)).

Qualified immunity is as an immunity not just from liability, but from suit. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" (citation omitted)). The unique burdens Plaintiff faces to defeat the immunity continue at summary judgment, where "[a] good-faith qualified immunity defense alters the usual summary judgment burden of proof," such that, although the evidence remains viewed "in the light most favorable to the nonmoving party, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). A plaintiff must demonstrate that a defendant

is not entitled to qualified immunity by establishing two prongs – one factual, "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right," *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citations omitted), *reversed on other grounds*, 577 U.S. 7 (2015) (per curiam) – and one legal, "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident," *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

As this Court has noted, "[b]efore considering a summary judgment motion, discovery may be necessary to rule on the first prong, but no discovery is necessary to rule on the second." *Roe v. Johnson Cnty., Texas*, No. 3:18-CV-2497-B-BN, 2021 WL 321967, at *1–2 (N.D. Tex. Feb. 1, 2021) "And courts can—and often do—decide that a defendant is entitled to qualified immunity on the second prong alone." *Id.* (citing *Arizmendi v. Gabbert*, 919 F.3d 891, 904 (5th Cir. 2019) ("Knowing or reckless false statements in a warrant affidavit are not to be condoned. But Arizmendi has not persuaded us that Gabbert's actions were then illicit by clearly established law.")

The burden in showing Sgt. Rudloff violated clearly established law is high. *See, e.g.*, *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 496 (5th Cir. 2021) (Under the clearly-established prong, "'the dispositive question is whether the violative nature of *particular* conduct is clearly established.' [So, t]he plaintiff must identify controlling precedent that makes the unlawfulness of the officer's conduct sufficiently clear that a reasonable officer would have understood his conduct violated that right." (quoting *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019); citing *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020))).

"So, to put it plainly, even if the plaintiff can establish a constitutional violation, if he cannot carry his burden as to the clearly-established prong, game over. The Court will dismiss the plaintiff's action on qualified immunity grounds." *Roe*, 2021 WL 321967 at *2.

Discovery may sometimes be necessary in this process, but it is always to be circumscribed. Accordingly, while "a court's qualified immunity inquiry at [the summary judgment] stage requires that the Court 'accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true,'" *Nance v. Meeks*, No. 3:17-cv-1882-L-BN, 2018 WL 5624202, at *4 (N.D. Tex. Aug. 1, 2018) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); (citations omitted), *rec. accepted*, 2018 WL 5620469 (N.D. Tex. Oct. 30, 2018), an "attempt to obtain any evidence that may support a version of the facts that may defeat summary judgment on qualified immunity does not fit within the limited scope of a discovery request 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,' " because "open-ended requests – to uncover any facts, as opposed to specific questions of fact, that may be helpful to [a plaintiff's] version of events – fail to advance  . . . the 'careful procedure' set forth" by Fifth Circuit case law. *Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2019 WL 1957997, at *3 (N.D. Tex. May 2, 2019) (citations omitted).

The sole issue in Sgt. Rudloff's qualified immunity defense will be whether he had probable cause to arrest Plaintiff.

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Simply, the Fourth Amendment does not prohibit all searches and seizures—only those that are "unreasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001) (explaining people enjoy the

constitutional right to be free from false arrest without probable cause); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001) (noting the same).

The Fifth Circuit has held that probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001) (quoting *Spiller v. Tex. City*, 130 F.3d 162, 165 (5th Cir.1997)). To establish probable cause, a reasonable person standard is used. *Id*.

To prevail on a section 1983 claim for false arrest, Plaintiff must prove that Sgt. Rudloff did not have probable cause to arrest him. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty*, 391 F.3d at 656. "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi*, 919 F.3d at 897. The Fifth Circuit has, notably and cogently for this case, cautioned that "[i]n making a determination of probable cause, we do not require a police officer to be perfect, nor do we want him always to err on the side of caution out of the fear of being sued." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992).

The Fifth Circuit has found whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence, is of no importance. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Rather, "[w]ith regard to pretrial confinement, '[t]he sole issue [under the Fourth Amendment] is whether there is probable cause for detaining the arrested person pending further proceedings,'" and finding illegal detention claim could stand where there was a factual dispute over the existence of probable cause. *Whittington v. Maxwell*, 455 F. App'x. 450, 458–59 (5th Cir.2011) (citation omitted); *see also O'Dwyer v. Nelson*, 310 F. App'x. 741,

745 (5th Cir.2009) (" '[T]o prevail in a § 1983 claim for false arrest,' ... [a]s applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." (citations omitted)). As the Fifth Circuit has summarized:

> The Court notes that to prevail on a § 1983 false arrest claim, the plaintiff bears the burden to show that the police officer did not have probable cause to arrest him. Probable cause is found "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." The police officer is entitled to qualified immunity if a reasonable officer in his position could have believed that in light of the totality of the facts and circumstances of which the police officer was aware, there was a fair probability that the [individual] had committed or was committing an offense. "Fair probability" for purposes of probable cause requires more than a bare suspicion, but less than a preponderance of evidence. Even if the police officer reasonably but mistakenly determined that probable cause existed, he is entitled to immunity.

*Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 196 L. Ed. 2d 397, 137 S. Ct. 497 (2016), *and opinion reinstated in part*, 905 F.3d 334 (5th Cir. 2018) (emphasis added.)

## A. Plaintiff Never Conferenced with Defendants Regarding This Motion.

As a preliminary matter, the Motion does not contain a certificate of conference. Under this Court's Local Rules, conferencing is almost always required. N.D.Tex. L. Civ. R. 7.1(a). *Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 2018 WL 2317696, at *14 (N.D. Tex. May 22, 2018) ("The local rules of this Court, furthermore, require parties to confer before filing non-dispositive motions unless 'a conference is not possible.'") (citing N.D. Tex. L. Civ. R. 7.1(a)). In addition, "[e]ach motion for which a conference is required must include a certificate of conference indicating that the motion is unopposed or opposed," and if the "motion is opposed, the certificate must state that a conference was held, indicate the date of conference and the identities of the attorneys conferring, and explain why agreement could not

be reached." *See* N.D. Tex. L. Civ. R. 7.1(b)(1) and (2). When "a conference was not held, the certificate must explain why it was not possible to confer, in which event the motion will be presumed to be opposed." *See* N.D. Tex. L. Civ. R. 7.1(b)(3).

"Conference requirements 'encourage resolving discovery disputes without judicial involvement.'" *Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) ), *modified in part on other grounds*, 2015 WL 12532137 (N.D. Tex. June 22, 2015). Such requirements are "part and parcel of the ethical rules governing attorneys and the court rules governing all parties, including pro se parties, that require all parties to engage in meaningful discussions in an attempt to resolve matters without court intervention." *Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014) (citing *Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289-90 (N.D. Tex. 1988)).

This Court has repeatedly found that failure to confer is an adequate reason to deny a discovery motion. *See*, *e.g.*, *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696, at *17; *Seastrunk v. Entegris, Inc.*, No. 3:16-CV-2795-L, 2017 WL 6406627, at *10 (N.D. Tex. Dec. 15, 2017); *Harper v. City of Dallas, Tex.*, No. 3:14-CV-2647-M, 2017 WL 3674830, at *13 (N.D. Tex. Aug. 25, 2017). As this Court has noted, in general, "conferring on the matters raised in the motion could very well eliminate the need for the motion or, at the very least, limit the issues to be resolved by the Court." *Eagle Railcar Servs.-Roscoe, Inc.,* 2018 WL 2317696, at *17.

Plaintiff seeks, *inter alia*, production of voluminous documents and answers to numerous interrogatories. Docs. no. 30-1-4. Per Local Rule 7.1(h), parties are required to conference prior to seeking the Court's intervention in discovery disputes. Plaintiff never attempted to conference

regarding any of the requested discovery matters contained therein, and thus no efforts were made to narrow the disputed matters prior to reaching this Court through the instant Motion.

As such, Plaintiff's Motion should be denied.

**B. Plaintiff's Requests Seek General Discovery, Not Information Tailored to Sgt. Rudloff's Qualified Immunity Defense.**

Plaintiff proposes propounding four separate discovery requests, including a set of interrogatories and requests for production to both the City and Sgt. Rudloff. (Doc. no. 30-1-4.) The Motion – and proposed discovery – all fail to narrowly tailor discovery to the qualified immunity issues necessary for this Court to decide whether Sgt. Rudloff is entitled to dismissal.

First, Plaintiff's original sin, which mars all of his discovery requests: application of the incorrect standard. The Motion cites Federal Rule of Civil Procedure rule 26(b)(1) for the proposition that Plaintiff is entitled to the broad discovery he seeks. Mot. pp. 1-2. In denying a motion for leave to conduct limited discovery for a converted motion for summary judgment regarding qualified immunity, this Court seized on a plaintiff's similar efforts:

> Tellingly, in the motion for leave, Plaintiffs argue that, "[s]hould" witnesses identified in response to the requested discovery "have information that contradict sworn statements of Defendants and their co-workers, such information would certainly fall with the scope of discoverable information" under Federal Rule of Civil Procedure 26(b)(1). But Rule 26(b)(1) defines what is relevant very broadly. That rule's "broad scope of relevance" far exceeds the scope of discovery allowed prior to the Court's resolution of a qualified immunity defense.

*Hutcheson*, 2019 WL 1957997, at *3–4 (citations omitted.)

Second, unlike a section 1983 case where a decedent's estate brings suit and the decedent's heirs were not present at the precipitating event, Plaintiff was present during the entirety of the events on which his lawsuit is premised. Plaintiff's Complaint alleges that he is a journalist who was attempting to cover the 2020 protests and "documented" protestors who were present on I-35. Doc. no. 1, ¶¶ 17-20. After reaching a grassy area by the highway, Plaintiff "witnessed officers

begin to make a series of arrests," and took photographs of same – several of which are in his Complaint. *Id*. pp 6-7. The basis of Plaintiff's claims are his allegations that after taking the photographs, Sgt. Rudloff falsely arrested and charged Plaintiff in retaliation for his capturing what he claims was police misconduct. *Id*. ¶¶ 24-28. Multiple photographs in Plaintiff's Complaint explicitly show Plaintiff (1) directly adjacent to the allegedly unlawful arrests; and (2) in communication with a mere feet-away Sgt. Rudloff. *Id*. pp. 9; 11-12. As such, Plaintiff is in the same position as Sgt. Rudloff to speak to the issues surrounding his arrest. He can, without the benefit of discovery, detail exactly where he was and what he was doing at the time of his arrest. Plaintiff is also in the unique position of having documented the events with his own camera and thus has pictorial recordings of what transpired. If Plaintiff's versions of events sufficiently contradict Sgt. Rudloff's, then he can create a fact issue and survive summary judgment on qualified immunity. If his testimony and documentary evidence cannot, he will fail to overcome his high burden.

Regardless, as seen below, the requested discovery is far outside what is required for the question of whether there was probable cause at the time of Plaintiff's arrest and charge. Forcing Sgt. Rudloff and the City to respond to these capacious requests would deprive them of "[o]ne of the most salient benefits of qualified immunity," "protection from pretrial discovery." *Hinojosa v. Livingston*, 807 F.3d 657, 663 (5th Cir. 2015).

### (i)   Plaintiff's Requests to Sgt. Rudloff far exceed any qualified immunity issues and delve into general discovery matters.

Plaintiff's proposed interrogatories to Sgt. Rudloff involve absolutely no inquiries into the qualified immunity questions this Court confronts. Plaintiff instead seeks sworn responses for these three interrogatories:

1) Describe your duties and responsibilities as a Sergeant with the Dallas Police Department.
2) Describe your employment history for the *ten years prior* to your hiring by the Dallas Police Department.
3) Identify all lawsuits in which you are or have even been a Defendant, by case name, docket number, and court.

Doc. no. 30-4 (emphasis added).

These inquiries do not involve whether Sgt. Rudloff had probable cause to detain and arrest Plaintiff and charge him with a crime but are meant to – at best – uncover background information on Sgt. Rudloff's general employment and legal history. How, for example, Sgt. Rudloff's decade of employment prior to his joining the Dallas Police Department factors into whether he violated clearly established law on the day in question is inexplicable. Further, Plaintiff's "duties and responsibilities as a Sergeant" have no bearing on whether Plaintiff's actions would have possibly caused a reasonable person to believe a crime had been committed. Lastly, Sgt. Rudloff's lawsuit history is completely irrelevant to whether Plaintiff's May 30, 2020 arrest was in violation of the clearly established law of that timeframe. Whether Sgt. Rudloff has a spotless record or a disturbing one is of no import.

Similarly, all the proposed requests for production likewise delve into general discovery issues – and most likely, even areas outside of the broad scope of Rule 26(b)(1) during full-blown discovery:

1. All documents identified in your Initial Disclosures.

2. All documents in your possession which pertain to the incidents described in Plaintiff's complaint.

3. All documents which pertain to your Texas Peace Officer License, including documents pertaining to trainings, certifications, and courses completed to maintain your license.

4. For the time period May 25, 2020 to the present, all communications sent or received by you on official and personal accounts and devices (including social media accounts) which use any of the following keywords:

    a. Rusanowsky
    b. protest
    c. "George Floyd"
    d. *photographer*
    *e. media*
    f. press
    g. BLM
    h. "black lives matter"

5. All documents in your possession which pertain to any investigation conducted by the Dallas Police Department, or any disciplinary action taken against you during your career in law enforcement.

Doc. no. 30-3 (emphasis added).

Revealingly, to take just one example, under Plaintiff's proposed requests, a recent text from a high school friend to Sgt. Rudloff's personal phone regarding "media" coverage of recent elections, stock prices, or even the Dallas Mavericks would be responsive. Similarly, an email to a family member about the hiring of a "photographer" for an upcoming reunion would be as well. The process alone of reviewing all personal devices and media accounts to search for this information is staggering and yet any production would shed no light on whether Sgt. Rudloff had probable cause to arrest and charge Plaintiff on the day at issue.

Further, Plaintiff seeks documentation regarding Sgt. Rudloff's entire career. Request number 3, for example, would require production of Sgt. Rudloff's training and certifications spanning over two decades. The City requires recruits to complete 36 weeks of training – much of which involves becoming certified under Texas laws to become a peace officer – and a further 24 weeks of field training, as well as vast amounts of continuing training throughout officers' careers. None of this factors into whether Sgt. Rudloff violated clearly established law on the day of Plaintiff's arrest. Yet, producing same would entail enormous efforts.

Further, information regarding Sgt. Rudloff's past alleged misdeeds or the inquiries into same is little more than impeachment evidence. Even if Sgt. Rudloff had committed countless errors, or even intentional bad acts, prior to his arrest of Plaintiff, such information would be irrelevant to the inquiry of probable cause.

Lastly, Plaintiff's request for "all documents in your possession which pertain to the incidents described in Plaintiff's complaint" is open-ended in the extreme and would include even privileged materials. While perhaps relevant to impeachment or part of Plaintiff's broader case against Sgt. Rudloff, such a request is not tailored to the issue at hand.

### (ii)   Plaintiff's Requests to the City likewise far exceed any qualified immunity issues and delve into general discovery matters.

Plaintiff's lawsuit named the City as a Defendant. *See generally*, Doc. no. 1. The City, while the employer of Sgt. Rudloff during the 2020 protests, is not one and the same with him. As stated in *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), "while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others." The Court has consistently refused to hold municipalities liable under a theory of *respondeat superior*. *See, e.g. Oklahoma City v. Tuttle*, 471 U.S. 808, 81 (1985) (plurality opinion). Sgt. Rudloff's actions, therefore, cannot bind the City in all but a few, narrow circumstances. Plaintiff's discovery, however, effectively ignores this and seeks not only materials related to Sgt. Rudloff, but many other areas touching on the City's record. The City's Motion to Dismiss is fully briefed and awaiting ruling. Docs. no. 15; 18; 22. Per this Court's August 30, 2022 Order, all discovery is stayed except as to qualified immunity – and even then only with Court approval. Doc. no. 23, ¶ 2. Discovery against the City is therefore stayed. The City objects,

12

therefore, to any discovery propounded against it at all. The City requests the Court deny Plaintiff's

Motion as it concerns the City.

Even still, as seen below, Plaintiff seeks general information from the City unrelated to any

of the qualified immunity issues at hand.

As with Sgt. Rudloff, Plaintiff's proposed interrogatories to the City are inquiries into

matters completely unrelated to whether Sgt. Rudloff is entitled to qualified immunity:

> 1.Identify all individuals who were Defendant Rudloff's direct superiors and
> subordinates on May 30, 2020.
>
> 2. Identify all law enforcement personnel—by name, badge number, and position—
> *employed by agencies other than the Dallas Police Department* who responded to the
> events on and proximate to IH-35 at the Dallas Protests on May 30, 2022.
>
> 3. Identify each instance of a complaint, investigation, or inquiry—whether formal or
> informal, through official or unofficial means—raised against Defendant Rudloff while
> employed with the Dallas Police Department.

Doc. no. 30-2 (emphasis added).

Request one seeks information regarding Sgt. Rudloff's "superiors and subordinates" on

the day of the incident. It does not limit the inquiry to any issues related to Plaintiff's arrest,

whether these individuals witnessed the arrest, or were part of any investigation. The only possible

purpose Plaintiff has in identifying these individuals is for propounding discovery on them, all in

the hopes that they may have information regarding Plaintiff's arrest. Even still, Plaintiff's Motion

did not seek leave to serve discovery on any of these individuals, and would thus require Plaintiff

to return to the Court to seek leave yet again.  These interrogatories are general discovery, not

qualified immunity discovery.

Request two seeks voluminous, irrelevant information about agencies *other than* the Dallas

Police Department's response to the largest protest in City history. Hundreds of law enforcement

personnel were involved in responding to the protests – many of which turned violent – all through

the City, and I-35 specifically, on the day in question. Whether, say, individuals from the FBI or Garland Police happened to be involved in the response to the protests has no bearing on whether Sgt. Rudloff had probable cause to arrest and/or charge Plaintiff. Likewise, what their specific names and badge numbers are have no bearing on whether Sgt. Rudloff had probable cause to arrest Plaintiff. Even assuming the City had all of this information – which is certainly does not in any straightforwardly searchable format currently known – then this information would necessarily lead to a months-long fishing expedition of identifying these individuals and propounding discovery on them, all in the hopes that they may have information regarding Plaintiff's arrest. Plaintiff would again be required to return to this Court to seek leave to propound additional discovery on these individuals. This is general discovery, not qualified immunity discovery.

Request three again seeks generalized information about Sgt. Rudloff's past. Whether Sgt. Rudloff had committed prior misdeeds has no bearing on whether he arrested Plaintiff without probable cause.

Plaintiff's requests for production to the City fare no better that the interrogatories. Plaintiff seeks the following:

1.   All documents identified by Defendant City of Dallas in its Initial Disclosures.

2. All documents in the Dallas Police Department's custody pertaining to Plaintiff Christopher Rusanowsky.

3. All communications of any City entity and/or Dallas Police Department personnel related to Plaintiff Christopher Rusanowsky.

4. All body camera footage or other video or audio recordings from Dallas Police Department officers who were present on and proximate to IH-35 at the Dallas Protests on May 30, 2020.

5. All documents contained in Defendant Rudloff's personnel file, including any F-5 reports, as maintained by the Defendant City of Dallas and Dallas Police Department.

6. All documents related to the Defendant City of Dallas's rules and/or procedures for training Dallas Police Department officers on the policing of protests, mass arrests, and interacting with members of the press.

7. All documents reflecting any directives or guidance issued by the Dallas Police Department to its personnel after George Floyd's death and in preparation for the Dallas Protests.

8. All documents related to Defendant City of Dallas's criminal investigation or disciplinary investigation into Defendant Sgt. Rudloff due to his conduct at the Dallas Protests on May 30, 2020.

9. All incident reports or narratives authored or submitted by Dallas Police Department officers present on and proximate to IH-35 at the Dallas Protests on May 30, 2020.

10. All transcripts or recordings of interviews conducted by the Dallas Police Department, or any City entity, with Dallas Police Department officers who were present on and proximate to IH-35 at the Dallas Protests on May 30, 2020.

Without belaboring the requests one-by-one, each request seeks comprehensive information about either (1) the City's policies; (2) the broader events of May 30, 2020; or (3) Sgt. Rudloff's record. All are impermissible.

As to the City's policies, the information sought has no bearing on whether Sgt. Rudloff violated clearly established law. Whether the City adequately trained its employees and put appropriate policies in place regarding mass arrests relates to the City's municipal liability. Even assuming Sgt. Rudloff misbehaved due to inadequate training, which he did not, whether probable cause existed to arrest Plaintiff is an entirely different matter. These requested materials are irrelevant.

As to Plaintiff's broad requests related to the day of the incident, these "open-ended requests – to uncover any facts, as opposed to specific questions of fact, that may be helpful to [a plaintiff's] version of events – fail to advance the . . . 'careful procedure' set forth" by Fifth Circuit case law. *Hutcheson*, 2019 WL 1957997, at *3 (citations omitted). The amount of material Plaintiff seeks – such as "[a]ll transcripts or recordings of interviews" of the many law enforcement officers

responding to one of the 2020 protests' most active scenes is staggering. Despite the Motion's implication that the City has all records of the protests in some format wherein the City can easily search for relevant records, the chaotic events of May 30, 2020 – June 1, 2020 left behind thousands of pages of materials, countless body-worn camera records, reports, and physical evidence that cannot simply be handed over with any degree of certainty the materials would be fulsome and fully responsive. Instead, Plaintiff seeks vast universes of materials which would require a burdensomely extensive effort on Defendants' part.

Lastly, as discussed above, any records of Sgt. Rudloff's prior employment history and any investigations are irrelevant to his qualified immunity defense.

### III.   CONCLUSION

The defense of qualified immunity is in no small part designed to prevent fishing expeditions in discovery. The vast amounts of information and documents Plaintiff requests cannot be characterized as "limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on that defense." *Hutcheson*, 2019 WL 1957997 at *2.

The Motion should be denied.

**CERTIFICATE OF SERVICE**

I certify that on December 12, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ J. Cheves Ligon*
Senior Assistant City Attorney

17