IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER RUSANOWSKY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1132-K |
| | § | |
| THE CITY OF DALLAS and SGT. | § | |
| ROGER A. RUDLOFF, individually and | § | |
| in his official capacity as a Dallas Police | § | |
| Department Police Officer, | § | |
| | § | |
| Defendants. | § | |

## ORDER REQUIRING JOINT STATUS REPORT

Plaintiff Christopher Rusanowsky has sued the City of Dallas and one of its police officers (Sgt. Roger A. Rudloff) alleging that the defendants violated his constitutional rights to record the police performing their duties in public, to not be detained without reasonable suspicion, and to not be subjected to warrantless arrest without probable cause. *See* Dkt. No. 1. Rudloff answered, asserting qualified immunity. *See* Dkt. No. 14, ¶ 2.4.1.

The Court then entered an order setting out procedures to consider and resolve Rudolf's entitlement to qualified immunity. *See* Dkt. No. 23. Under this order, Rusanowsky filed a reply under Federal Rule of Civil Procedure 7(a), *see* Dkt. No. 26; Rudloff noticed his intent to move for summary judgment on qualified immunity, *see* Dkt. No. 27; Rusanowsky moved for leave to conduct limited discovery, *see* Dkt. No. 30; and Rudloff responded to the motion for leave, *see* Dkt. No. 31.

The Court has now referred the motion for leave to conduct limited discovery

to the undersigned United States magistrate judge for disposition under 28 U.S.C. § 636(a). *See* Dkt. No. 32.

After reviewing the motion for leave and its response, the undersigned will require that, after considering the legal standards set out below, the parties <u>meet and confer in person or by videoconference</u> regarding the proposed discovery requests by **January 27, 2023** and then by **February 3, 2023** file a joint status report that (1) sets out all discovery requests that they agree are authorized under the careful procedure the United States Court of Appeals for the Fifth Circuit requires before a district court may grant leave to conduct limited discovery that is narrowly tailored to uncover only facts that the district court needs to rule on a defendant's entitlement to qualified immunity and (2), as to each discovery request that Rusanowsky still believes is authorized under the careful procedure, but which Rudolf believes is not, Rusanowsky may supplement his motion for leave to explain how that particular request is authorized, and Rudolf may supplement his response to provide his view as that particular request.

"Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 134 (5th Cir. 2021) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). So "a defendant's entitlement to qualified immunity must be determined 'at the earliest possible stage of the litigation.'" *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quoting *Ramirez*, 3 F.4th at 133); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed

- 2 -

the importance of resolving immunity questions at the earliest possible stage in litigation.").

And the established procedure under which courts must address qualified immunity, once asserted, therefore "prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." *Ramirez*, 3 F.4th at 134 (citations omitted); *see also Carswell*, 54 F.4th at 310 ("[O]ne of the most important benefits of the qualified immunity defense is 'protection from pretrial discovery, which is costly, time-consuming, and intrusive.'" (quoting *Backe*, 691 F.3d at 648; citation omitted)).

Consequently, all discovery is typically stayed pending a ruling on a defendant's entitlement to qualified immunity. *See Wicks v. Miss. State Employment Servs., Inc.*, 41 F.3d 991, 994-95 (5th Cir. 1995); *accord Zapata v. Melson*, 750 F.3d 481 (5th Cir. 2014); *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012); *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir. 1987); *Webb v. Livingston*, 618 F. App'x 201 (5th Cir. 2015) (per curiam).

But, where a defendant asserts qualified immunity – but the Court is not currently considering a motion to dismiss the complaint (or or any portion of it) on that basis, *see Carswell*, 54 F.4th at 311-12 – the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover only facts that the Court needs to rule on the defendant's entitlement to qualified immunity, *see Wicks*, 41 F.3d at 994; *Backe*, 691 F.3d at 648 ("[T]his court has established a careful procedure under which a district court may defer its qualified

- 3 -

immunity ruling if further factual development is necessary to ascertain the availability of that defense.").

Fundamental to this careful procedure is that, regardless how asserted, once qualified immunity is asserted in good faith, "the burden is on the plaintiff to demonstrate [its] inapplicability." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc); *see also Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020) ("When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))).

> *Zapata* articulates the steps a district court must take in an order *authorizing* limited qualified immunity discovery – to avoid entering an order that would deny the defendant the benefits of the defense. The first step of this procedure requires the Court to find that the complaint alleges facts sufficient to overcome qualified immunity. At the second step, the Court must "identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to qualified immunity." And the third step requires an examination of the specific discovery requests.

*Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 321967, at *2 (N.D. Tex. Feb. 1, 2021) (quoting *Zapata*, 750 F.3d at 485; citation omitted).

Put another way, at the first step, "a plaintiff seeking to overcome QI must assert facts that, if true, would overcome that defense. It is not enough broadly to seek information that might impeach the defendants' version of events." *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 481 (5th Cir. 2021) (citing *Zapata*, 750 F.3d at 481). So, at step one, the plaintiff must convince the Court that the pleadings, "taken as

- 4 -

true, overc[o]me the qualified immunity defense" because, before authorizing limited discovery, "this holding must be made explicitly" by the district court. *Zanitz v. Seal*, 602 F. App'x 154, 163 (5th Cir. 2015) (per curiam) (citing *Zapata*, 750 F.3d at 485 n.2). Accordingly, the functional equivalent of carrying the step-one burden would be for a plaintiff's pleadings to demonstrate that a motion to dismiss based on qualified immunity should be denied. *See id.* at 163 n.8.

But, even if the Court holds that sufficient facts have been alleged, a plaintiff will still falter at step two by "fail[ing] to identify any question of fact that the court must resolve before determining QI." *Hutcheson*, 994 F.3d at 481 (citing *Backe*, 691 F.3d at 648); *see also Zanitz*, 602 F. App'x at 163 ("Even a 'limited discovery' order does not satisfy the second step if 'the district court [does] not identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to immunity.'" (citing *Zapata*, 750 F.3d at 484-85)).

Only after a plaintiff passes through these two gates will the Court examine the specific discovery requests proposed to determine if any are narrowly tailored. *See, e.g.*, *Webb*, 618 F. App'x at 209-11; *see also Carswell*, 54 F.4th at 311 (explaining that the purpose of the careful procedure "is *only* to allow the district court to rule on the defendant's assertion of QI; its purpose is *not* to provide a backdoor for plaintiffs to circumvent the defendant's immunity from suit" and that "where the QI-asserting official determines that any pre-ruling discovery sought or ordered in the district court crosses the line from permissible *Lion Boulous* discovery to impermissible vitiation of the official's immunity from suit, the collateral order doctrine authorizes

an immediate appeal" (citations omitted)).[1]

       SO ORDERED.

       DATED: December 28, 2022

                                     DAVID L. HORAN
                                     UNITED STATES MAGISTRATE JUDGE

---

[1] *Cf. Webb*, 618 F. App'x at 210 (Contrary to the general rule, "'immediate appeal is available for [qualified immunity] discovery orders which are either avoidable or overly broad.' [But a] district court's discovery order is neither avoidable nor overly broad, and therefore not immediately appealable, when: (1) the defendant's entitlement to immunity turns at least partially on a factual question; (2) the district court is unable to rule on the immunity defense without clarification of these facts; and (3) the discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense." (quoting *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991), then citing *Lion Boulos*, 834 F.2d at 507-08)).