**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CHRISTOPHER RUSANOWSKY,<br><br>***Plaintiff***,<br><br>v.<br><br>CITY OF DALLAS and SGT. ROGER A. RUDLOFF, individually and in his official capacity as a Dallas Police Department Police Officer,<br><br>***Defendants***. | Civil Action No. 3:22-cv-1132 |

**JOINT STATUS REPORT**

On December 28, 2022, the Court ordered the parties to confer over the pending Motion for Leave to Conduct Limited Discovery. Dkts. 30, 35. In their conference, the parties were to consider which discovery requests they agreed were within the scope of permissible discovery at this phase of the lawsuit, relying on the Fifth Circuit's "careful procedure" for authorizing limited discovery to resolve the question of Defendant's entitlement to qualified immunity. Dkt. 35 at 1. Where the parties were unable to reach an agreement, they were permitted to file supplemental responses to further explain their respective positions on each request where disagreement remains. *Id.*

The parties so conferred on January 26, 2023. During that conference, they discussed the possibility of agreeing to a subset of discovery that is narrower in scope than the requests originally proposed in the pending motion. No agreement was reached in substance, but at the conclusion of the conference counsel for Plaintiff agreed to submit his proposals in writing to counsel for Defendant, who would then advise counsel for Plaintiff of their position. Counsel for Plaintiff

submitted their proposals on January 27, 2023, and on January 31, 2023, counsel for Defendant responded that they could not agree to the narrowed requests.

Because the parties were unable to come to an agreement on the proposed discovery they believe is authorized at this time, they submit the following supplemental responses to further advise the Court of their respective positions:

## I. Plaintiff's Supplemental Response

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). At the motion to dismiss phase, plaintiffs must carry that burden without the benefit of discovery. *See Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022). At the summary judgment phase, however, where disputed factual questions are bound up with the resolution of the immunity claim, narrowly tailored discovery is permitted. *See Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987) (it is of a class of discovery that is "neither avoidable nor overly broad").

Here, limited, targeted discovery is necessary to resolve Defendant Rudloff's assertion of qualified immunity because, as was the case in *Lion Boulos*, "[Rudloff's] immunity defense is not conceptually distinct from the merits of [Rusanowsky's] claim[s] . . . ." *Lion Boulos v. Wilson*, 834 F.2d 504, 509 (5th Cir. 1987). This is so for two reasons. *First*, Defendant Rudloff's Answer raises several bases for immunity that implicate key factual disputes at the heart of this case; these include:

1. Whether there was "probable cause to believe that Plaintiff had committed a criminal offense, justifying seizure." Dkt. 14, ¶ 2.4.2; *see Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (whether probable cause existed requires evaluation of the

"facts and circumstances within the officer's knowledge … at the time of the arrest"); *see also Turner v. Lt. Driver*, 848 F.3d 678, 694 (5th Cir. 2017) (same);

2. Whether "Defendant's actions were objectively reasonable under the circumstances known to Defendant when he acted." Dkt. 14, ¶ 2.4.1; *see Turner*, 848 F.3d at 691 (5th Cir. 2017) (requiring consideration of the "information available to the officer at the time of the decision to stop a person");

3. Whether Defendant Rudloff acted with "intent to deprive Plaintiff of any legally protected rights" or "intentionally [sought] out Plaintiff due to his status as a member of the press, threaten him, or otherwise attempt to impede Plaintiff's First or Fourth Amendment rights." Dkt. 14, ¶¶ 2.4.1-.2; *see Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (claim of First Amendment retaliation requires showing that the "defendant['s] adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct.").

*Second*, it is Plaintiff's understanding, based on representations made by counsel for Defendant during their discovery conference, that Defendant Rudloff does not intend to seek summary judgment on his qualified immunity defense exclusively on a pure question of law, *i.e.*, whether Plaintiff's constitutional rights were clearly established at the time of his arrest. *See Lion Boulos*, 834 F.2d at 508 (pure questions of law do not need discovery to be resolved).

Narrowly tailored discovery is therefore authorized and necessary to resolve the disputed factual questions that are enmeshed with Defendant Rudloff's immunity defense. Following the parties' conference, in an attempt to come to an accord with Defendant regarding the discovery that was authorized under the Fifth Circuit's "careful procedure" for resolving qualified immunity defenses, *Carswell*, 54 F.4th at 311, Plaintiff offered to narrow his requests to four items, and

withdraw his motion as to all others. Each item was further limited in scope compared to the requests proposed in his original motion. Plaintiff proposed narrowing his original requests by amending them as follows:

1. City RFP No. 4 (Dkt. 30-1 at 6): Body camera footage and recordings generated on May 30, 2020 from the following Dallas Police Department personnel:

    a. Roger Rudloff
    b. Russell Barrett
    c. Chinh Weltman
    d. Thomas Hoffman
    e. David Pillar
    f. [First Name Unknown] Transou (Badge No. 6940)
    g. Thomas Philip Hoffman
    h. Any of the "several videos" identified in Defendants' Initial Disclosures, if not duplicative of videos recorded by the officers listed above

2. City RFP No. 7 (Dkt. 30-1 at 6): Records reflecting any directives or guidance regarding the press or media issued by the Dallas Police Department to its personnel and/or the public between May 25, 2020 and June 1, 2020.

3. City RFP No. 8 (Dkt. 30-1 at 6): Any officer narratives, witness statements, factual summaries, and photo or video evidence included in the investigation materials generated or collected as part of DPD's criminal and administrative/disciplinary investigations into Defendant Rudloff's conduct on May 30, 2020.

4. Rudloff RFP No. 4 (Dkt. 30-3 at 6): For the time period May 25, 2020 to August 16, 2020, all communications sent or received by you on official and personal accounts and devices (including social media accounts) which use any of the following keywords:

    a. Rusanowsky
    b. protest
    c. "George Floyd"
    d. photographer

e. media
f. press
g. BLM
h. “black lives matter”

These substantially narrowed requests fit comfortably within the Fifth Circuit’s requirement of narrow tailoring for qualified immunity discovery. For the following reasons, each amended request on its own is sufficiently tailored to “uncover only those facts needed to rule on the immunity claim[.]” *Lion Boulos*, 834 F.2d 507-08.

1. City RFP No. 4

The officers listed here represent all the officers Plaintiff can readily identify at this time who have discoverable information about Plaintiff’s arrest. In addition to Defendant Rudloff, Officers Barrett, Weltman, Hoffman, and Pillar were identified by Defendants in their Initial Disclosures as having knowledge of “the surrounding events and what precipitated the arrests at issue.” Additionally, Officers Transou and Hoffman were named on an incident report which documented the purported basis for Plaintiff’s arrest.

Obtaining body cam footage from these officers is essential because the footage serves as a record of the officers’ perspectives as the events of May 30, 2020 unfolded. This footage therefore helps establish “the totality of facts and circumstances within a police officer’s knowledge at the moment of arrest[,]” *Turner*, 848 F.3d at 694, including what was known to other officer’s on scene and what was communicated to Defendant Rudloff at the time of Plaintiff’s detention and arrest.

2. City RFP No. 7

Plaintiff also proposed that the City produce “any directives or guidance regarding the press or media issued by the Dallas Police Department to its personnel and/or the public” for a one-week period. That period covers responsive records from the day of George Floyd’s death, to the day

after Plaintiff's arrest. This narrower request hones in on any applicable policies or instructions which would have established departmental limits on Defendant Rudloff's "discretionary authority" on May 30, 2020. Dkt. 14, ¶ 2.4.1.

In his Answer, Defendant Rudloff maintains, as part of his qualified immunity defense, that he operated within the bounds of his discretionary authority on that day. *See id.* He also maintains that his actions were "objectively reasonable under the circumstances known to [him] when he acted." *Id.* What policies regarding the press and the media were in place at the time of Plaintiff's arrest is a factual question that cuts directly to those bases for his immunity claim. They help establish whether Defendant Rudloff's conduct was improper as a matter of departmental policy, which is itself a factual concern affecting the "objective reasonableness" analysis. Indeed, policy violations are "evidence that an act was objectively unreasonable." *Dawes v. City of Dallas*, No. 3:17-CV-1424-X-BK, 2021 WL 9455786, at *3 (N.D. Tex. Sept. 24, 2021), *report and recommendation adopted in part and rejected in part*, 2022 WL 3273833, at *13 (Aug. 11, 2022).

3. City RFP No. 8

Plaintiff is aware that Defendant Rudloff has been the subject of criminal and administrative/disciplinary investigations conducted by DPD due to his conduct on May 30, 2020. *See* Miles Moffeit, Cassandra Jaramillo, and Madi Alexander, *Dallas police secretly dropped investigation into officer who shot protester with pepper-ball gun*, DALLAS MORNING NEWS (Sept. 10, 2021), https://www.dallasnews.com/news/investigations/2021/09/10/dallas-police-secretly-dropped-investigation-into-officer-who-shot-protester-with-pepper-ball-gun/; Miles Moffeit, *For the 19th time, Dallas police clear sergeant of misconduct*, DALLAS MORNING NEWS (Aug. 30, 2022), https://www.dallasnews.com/news/investigations/2022/08/30/for-the-19th-time-dallas-police-clear-sergeant-of-misconduct/.

The investigative materials produced through these inquiries almost certainly include factual descriptions and evidentiary material produced by witnesses to the events of May 30, 2020. This material serves as a centralized source of information collected by DPD to assess Defendant Rudloff's conduct on that day. The facts described or shown in these materials are exceedingly likely to reveal the progression of the events of May 30, 2020 from the perspective of different officers and witnesses on the scene, their interactions with Defendant Rudloff and recollections of his conduct, and statements reflecting what information was available to Defendant Rudloff when he engaged in the conduct that triggered these investigations.

4. Rudloff RFP No. 4

Plaintiff also seeks information in Defendant Rudloff's possession—using a limited set of keywords and a narrow timeframe—that is likely to reveal records and statements he made before, during, and shortly after the events in question. These records, like the body cam footage and investigative materials in the custody of the City of Dallas, are the most likely source of the most essential factual information needed to resolve Defendant Rudloff's immunity claims.

For example, the keywords proposed are intended to elicit records that would cover any communications made by Defendant Rudloff about Plaintiff and the events of May 30, 2020. These records are an important source of information regarding "the facts and circumstances within [Rudloff's] knowledge" when he arrested Plaintiff. *Club Retro*, 568 F.3d at 204; *see also Turner*, 848 F.3d at 694. Additionally, as part of his claim of qualified immunity, Defendant asserts that "he acted without objective malice and without an intent to deprive Plaintiff of his legally protected rights." Dkt. 14, ¶ 2.4.1. To overcome this basis for immunity, Plaintiff is required to show that Defendant Rudloff's "adverse actions were substantially motivated against" Plaintiff's exercise of his right to record the police in the exercise of their official duties. *Keenan*, 290 F.3d at 258. The

narrow set of keywords Plaintiff proposed is therefore also intended to identify records that, if they exist, reveal Defendant Rudloff's discriminatory intent in arresting Plaintiff for recording him shooting a protestor with his less-lethal weapon.

Finally, Plaintiff narrowed the proposed time period for these records to cover an approximately three-month time span—from the day of George Floyd's death, to one week following the publication of a front-page article in the *Dallas Morning News* about Defendant Rudloff's conduct on May 30, 2020. *See* Miles Moffeit, Cassandra Jaramillo, and Dianne Solis, "*I felt like my chest was on fire': Photo shows Dallas police officer shooting protester with pepper-ball gun*, DALLAS MORNING NEWS (Aug. 9, 2020), https://www.dallasnews.com/news/investigations/2020/08/09/i-felt-like-my-chest-was-on-fire-photo-shows-cop-blasting-a-peaceful-protester-with-a-pepper-ball-gun-at-close-range/. This time period is intended to target records and communications made contemporaneous or near-contemporaneous to the May 30, 2020 protests—while Defendant Rudloff's recollection of the events was likely freshest, and when he was most likely to be exchanging communications about those events.

## II. Defendant's Supplemental Response

### a. Plaintiff fails to identify an actual dispute of relevant fact.

"The Supreme Court has repeatedly made clear that 'the driving force' behind qualified immunity is 'a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery,' and it has 'stressed the importance of resolving immunity questions at *the earliest possible stage* in litigation.'" *Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022) (citations omitted) (emphasis in original).

As this Court has stated:

> *Zapata* articulates the steps a district court must take in an order *authorizing* limited qualified immunity discovery – to avoid entering an order that would deny the defendant the benefits of the defense. The first step of this procedure requires the Court to find that the complaint alleges facts sufficient to overcome qualified immunity. At the second step, the Court must "identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to qualified immunity." And the third step requires an examination of the specific discovery requests.

*Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 321967, at *2 (N.D. Tex. Feb. 1, 2021) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); citing *Zanitz v. Seal*, 602 F. App'x 154, 163 (5th Cir. 2015) (per curiam).

Here, Plaintiff fails to identify any *specific* factual dispute at issue. Instead, while somewhat whittled down from the prior <u>four sets</u> of proposed discovery, Plaintiff still seeks generalized discovery about the events surrounding his arrest – including materials from subsequent investigations and private communications. While Plaintiff broadly claims that fact issues related to his arrest are disputed, he fails to identify what those are sufficiently specific to warrant invasive discovery.

In Sgt. Rudloff's Answer, he specifically identified at least one justification for arresting Plaintiff:

> 2.4.2 Defendant further pleads, based upon the information described in the preceding paragraphs, there was probable cause to believe that Plaintiff had committed a criminal offense, justifying seizure. Further, based on all information reasonably available to Defendant, Plaintiff had been on a nearby highway obstructing traffic. Defendant did not intentionally seek out Plaintiff due to his status as a member of the press, threaten him, or otherwise attempt to impede Plaintiff's First or Fourth Amendment rights.

ECF no. 14 p. 13.

According to Plaintiff's Complaint, after a period of detainment at the scene, Plaintiff claims he was informed that he was being charged with "obstruction of a highway in violation of

the law." ECF no. 1 at ⁋⁋ 30-32. <u>Nothing in Plaintiff's Complaint disputes that he had been on the highway</u>. Instead, it coyly alleges as follows:

- "When protesters marched onto Interstate 35, the journalists documented it." *Id.* ⁋ 20.
- His arrest for obstructing the highway was "surprising as Rusanowsky first saw Defendant Sgt. Rudloff and the other arresting officers when he was on the grassy shoulder, well away from the highway." *Id.* ⁋ 32.
- "Multiple photographs of the arrest taken by a Dallas Morning News photographer and a local student photojournalist all show that Rusanowsky was well clear of any roadway at the time of his arrest, indicating there was no probable cause to justify Rusanowsky's arrest for highway obstruction under Texas law. In fact, as he photographed the arrest of Verastique, Rusanowsky was clearly located farther from a roadway than Defendant Sgt. Rudloff himself." *Id.* ⁋ 33.

The Texas Penal Code defines the relevant misdemeanor of "obstruction of a highway" as the following:

> (a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
>
> > (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others; or
>
> . . .
>
> (b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

Tex. Penal Code Ann. § 42.03.

Sgt. Rudloff's Answer properly alleged that the information he had was that Plaintiff had violated the above statute. Plaintiff's Complaint even specifies that he was told at the scene that he was being arrested for "obstruction of a highway." ECF no. 1 at ⁋⁋ 30-32.

Illustratively, this Court recently only permitted limited qualified immunity discovery in *Henriquez v. City of Farmers Branch, Texas* because the parties presented actual different versions

of events. No. 3:16-CV-868-M-BN, 2021 WL 5851445 (N.D. Tex. Dec. 8, 2021). There, the plaintiff alleged the decedent "never posed any threat of harm" to the shooting officer. *Id*. at *3. The defendant, on the other hand, claimed that the decedent provided sufficient cause for the use of deadly force by, *inter alia*, defiantly reaching underneath his car seat during the stop at issue. *Id*. at *5. This Court found that created the need for "evidence regarding this material question of fact before it can resolve whether Johnson is entitled to summary judgment – and the attendant claims should be dismissed – based on qualified immunity." *Id*. at *6. Here, unlike in *Henriquez*, there is no live dispute about whether Plaintiff was on the highway.

Instead, Plaintiff's discovery requests are, at best, attempts to test Sgt. Rudloff's assertions that *he* had specific information about Plaintiff's obstruction and probe the vast record for evidence about the surrounding circumstances, not whether the obstruction occurred. As the Fifth Circuit and this Court have repeatedly made clear, attempting to fish for any and all information that may support a version of Plaintiff's events is the specific type of discovery qualified immunity was designed to avoid. *See Hutcheson v. Dallas Cnty., Tex.*, No. 3:17-cv-2021-BN, 2019 WL 1957997, at *3 (N.D. Tex. May 2, 2019) (An "attempt to obtain any evidence that may support a version of the facts that may defeat summary judgment on qualified immunity does not fit within the limited scope of a discovery request 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,' " because "open-ended requests – to uncover any facts, as opposed to specific questions of fact, that may be helpful to [a plaintiff's] version of events – fail to advance the second step of the 'careful procedure' set forth in *Backe*, *Wicks*, and *Lion Boulos*...." (citations omitted), *aff'd*, ––– F.3d ––––, No. 20-10383, 2021 WL 1344002, at *3 (5th Cir. Apr. 12, 2021) ("Before limited discovery is permitted, a plaintiff seeking to overcome QI must assert facts that, if true, would overcome that defense. *It is not enough broadly to seek information that might*

*impeach the defendants' version of events.* Thus, the plaintiffs faltered at the first step of our two-step procedure. Moreover, they failed to identify any questions of fact that the court must resolve before determining QI, thereby failing the second step. The district court did not abuse its discretion in denying the motion for limited discovery." (citations omitted) (emphasis added)). Indeed, here, "Plaintiff's version of events" as laid out in his Complaint do not dispute that he had actually committed the offense at issue in this case.

This Court recently dealt with similar, open-ended requests for information:

> [h]ere, however, the [plaintiffs] proffer insufficient explanations for why the additional video footage and additional policies and procedures are necessary to allow the Court to resolve the specific qualified immunity issues raised in the motion for summary judgment. They seem to believe that some other footage or some other policy or procedure could allow them to present a version of the events in question that could defeat qualified immunity. But, because they fail explain why – that is, what specific questions this discovery could answer – they have only made open-ended requests and thus have not carried their burden to obtain limited discovery to respond to the qualified immunity motion.

*Tomlinson v. Dallas Area Rapid Transit*, No. 3:20-CV-3198-E-BN, 2021 WL 1541601, at *2 (N.D. Tex. Apr. 19, 2021).

Further, based on Plaintiff's pleadings and Sgt. Rudloff's qualified immunity assertions in his Answer, Plaintiff has not created a fact issue for the extremely narrow First Amendment retaliation claim(s) which require intrusive discovery.

As has been long recognized, "[t]he right to speak and publish does not carry with it *the unrestrained right to gather information*." *Zemel v. Rusk,* 381 U.S. 1, 17 (1965) (emphasis added); *see also Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (holding that like all rights, the newsgathering "right is not absolute" and "is not without limitations.") (citing *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011)). While recording police activity is, in general, undeniably protected speech, "[l]ike all speech, filming the police 'may be subject to reasonable time, place,

and manner restrictions.'" *Turner*, 848 F.3d at 690 (quoting *Glik*, 655 F.3d at 84)). Indeed, as the U.S. Supreme Court has stated:

> [d]espite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations. *Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded*, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal.

*Branzburg v. Hayes*, 408 U.S. 665, 684–85 (1972) (emphasis added.)

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998).

To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (emphasis in original.) "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*; *see also Hartman*, 547 U.S. at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Relevant here, the Supreme Court recently dealt with "whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First

Amendment." *Nieves,* 139 S. Ct. at 1725. The Court's ultimate conclusion: "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Id*. at 1724. As this Court only recently summarized: "under the clearly established law prong of the qualified immunity analysis, there is generally not a First Amendment right to be free from retaliatory arrest that is supported by probable cause." *Thomas v. Gage et al.*, No. 4:21-CV-692-P, 2022 WL 17586547, at *8 (N.D. Tex. Oct. 17, 2022) (citing *Nieves,* 139 S. Ct. at 1725); *see also Miller v. Salvaggio,* No. SA-20-CV-00642-JKP, 2021 WL 3474006, at *5 (W.D. Tex. Aug. 6, 2021) ("It is clearly established that an arrest or prosecution *unsupported by probable cause* that is made in retaliation for protected speech violates the First Amendment.") (citation omitted) (emphasis in original.) As detailed above, probable cause existed at the time of Plaintiff's arrest.

As the Supreme Court has recognized, a "purely subjective approach would undermine that precedent by allowing even doubtful retaliatory arrest suits to proceed based solely on allegations about an arresting officer's mental state." *Id.* at 1725. (citing *Lozman v. City of Riviera Beach, Fla.,* 138 S. Ct. 1945, 1953 (2018)). Because a state of mind is "easy to allege and hard to disprove," *Crawford-El*, 523 U.S. at 585, a subjective inquiry would threaten to set off "broad-ranging discovery" in which "there often is no clear end to the relevant evidence." *Harlow,* 457 U.S. at 817.

With amazing foresight, the Court noted that "[a]s a result, policing certain events like an *unruly protest* would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation." *Nieves,* 139 S. Ct. at 1725 (emphasis added.) A more subjective "standard would thus 'dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.'" *Id.*

(*quoting Gregoire v. Biddle*, 177 F. 2d 579, 581 (C.A.2 1949) (Learned Hand, C.J.). It would also compromise evenhanded application of the law by making the constitutionality of an arrest "vary from place to place and from time to time" depending on the personal motives of individual officers. *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004). The Court noted that "another 'predictable consequence' of such a rule is that officers would simply minimize their communication during arrests to avoid having their words scrutinized for hints of improper motive—a result that would leave everyone worse off.'" *Nieves*, 139 S. Ct. at 1725 (citing *Devenpeck*, 543 U.S. at 154.)

Thus, generally, a plaintiff must plead and prove the absence of probable cause for an arrest. However, the Supreme Court carved out a narrow exception to the general rule that the existence of probable cause will defeat a retaliatory arrest claim. Under this exception, a plaintiff need not show the lack of probable cause "where officers have probable cause to make arrests, but *typically* exercise their discretion not to do so." *Id.* at 1727 (emphasis added.) This is because "[i]n such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (citation omitted.) The Court provided the example of jaywalking, which it noted "is endemic but rarely results in arrest." *Id.* It continued, "[i]f an individual who has been vocally complaining about police conduct is arrested for jaywalking," the claim should not be dismissed despite the existence of probable cause because "[i]n such a case, . . . probable cause does little to prove or disprove the causal connection between animus and injury." *Id.* The Court "conclude[d] that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

This exception, the Fifth Circuit has found, is indeed narrow:

> The Court's language was careful and explicit: it required "objective evidence" of "otherwise similarly situated individuals" who engaged in the same criminal conduct but were not arrested. The most reasonable reading of this language is that some comparative evidence is required to invoke this "narrow" exception.

*Gonzalez v. Trevino*, 42 F.4th 487, 493 (5th Cir. 2022)

Sgt. Rudloff's Complaint does not allege he was even the only person arrested at the scene. He claims two others were arrested there, and his journalistic coverage of same is what led to his arrest. ECF no. 1, ¶¶ 2-3; 21 (". . . from this vantage point that Rusanowsky witnessed officers begin to make a *series of arrests*.") (emphasis added.) The Complaint even provides what it purports to be photographs of Sgt. Rudloff arresting these individuals. *Id*. pp. 6-7; 11-12.

In sum, there is no fact issue for whether this case can fit into the narrow *Nieves* hypothetical of a "jaywalking journalist" who is arrested for an endemic-but-unenforced law after criticizing the government. *Nieves*, 139 S. Ct. at 1727. Instead, Plaintiff's Complaint states was arrested – literally in real time – with other individuals for the exact same offense under the same set of facts.[1] In the Fourth Amendment context, the Supreme Court has "almost uniformly rejected invitations to probe subjective intent." *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011); *see also Kentucky v. King*, 563 U.S. 452, 464 (2011) ("Legal tests based on reasonableness are generally objective, and this Court has long taken the view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that

---

[1] The Complaint attempts to hyper-granularize the *Nieves* exception by alleging that because some journalists were allegedly present at the scene but were not arrested, then somehow Plaintiff has presented a scenario "where officers have probable cause to make arrests, but *typically* exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727 (emphasis added.) It is unknown whether other journalists violated the law. But such a reading of *Nieves* would cause the exception to swallow the rule and require litigants to specifically parse out the identities and characteristics of those police *do not arrest at a scene*. If, for a not-exactly-unlikely example, opposing protestors violently clashed and officers began making arrests, Plaintiff's reading would lead to judicial bean counting over whether more of this type of protestor was arrested than that type. "Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in 'circumstances that are tense, uncertain, and rapidly evolving.'" *Id* at 1724-25 (citation omitted.) No case law can support Plaintiff's attempt to require such specific examination.

depend upon the subjective state of mind of the officer." (internal quotation marks omitted)). There is no need for further inquiry into whether Sgt. Rudloff (or any DPD officer) refused to enforce the obstruction and/or rioting statutes because DPD officers enforced those very same statutes on others on the day in question.

Therefore, because probable cause existed to arrest Plaintiff and there can be no dispute that the laws under which Plaintiff was arrested were applied to others, there is no fact issue to solve regarding Plaintiff's First Amendment retaliation claim and Sgt. Rudloff's qualified immunity defenses.

**b. Plaintiff's specific requests are overbroad and irrelevant.**

Considering the above, Sgt. Rudloff briefly addresses the four remaining requested areas of discovery:

1. City RFP No. 4 (Dkt. 30-1 at 6): Body camera footage and recordings generated on May 30, 2020 from the following Dallas Police Department personnel:

a. Roger Rudloff
b. Russell Barrett
c. Chinh Weltman
d. Thomas Hoffman
e. David Pillar
f. [First Name Unknown] Transou (Badge No. 6940)
g. Thomas Philip Hoffman
h. Any of the "several videos" identified in Defendants' Initial Disclosures, if not duplicative of videos recorded by the officers listed above

First, in several of these requests, Plaintiff seeks discovery from the City. The City has filed its Motion to Dismiss, which has been fully briefed and is ripe for ruling. Plaintiff does not provide any sort of adequate explanation for why the City should be subjected to discovery. Second, these requests concern at least six other individuals not named as defendants in this case.

How any of their body-worn camera recordings could shed light on the central issue in this case of whether Plaintiff was obstructing a highway is unexplained.

The only potential value of these videos is not to determine whether Plaintiff was on the highway, but for impeachment evidence regarding how Sgt. Rudloff may or may not have known Plaintiff was doing so. Common experience shows body-worn cameras are not omniscient devices and would only tend to make Sgt. Rudloff's assertions more or less likely to be true. Any speculative searching for a "smoking gun" video is general discovery and should not be permitted.

2. City RFP No. 7 (Dkt. 30-1 at 6): Records reflecting any directives or guidance regarding the press or media issued by the Dallas Police Department to its personnel and/or the public between May 25, 2020 and June 1, 2020.

This onerous, largely inscrutable request would require the City to comb through the sea of documents related to the once-in-a-generation protest for an entire week to determine what "directives or guidance" it issued, and then, determine whether any of those concerned "press or media." Whether or not the City somewhere told officers to respect journalists' First Amendment rights or not does not impact the salient question of whether Plaintiff violated the law. *See Tomlinson*, 2021 WL 1541601, at *2 (noting that "qualified-immunity inquiry in this action brought under 42 U.S.C. § 1983 is focused on a violation of the Constitution or of federal law, not of police policy.")

3. City RFP No. 8 (Dkt. 30-1 at 6): Any officer narratives, witness statements, factual summaries, and photo or video evidence included in the investigation materials generated or collected as part of DPD's criminal and administrative/disciplinary

investigations into Defendant Rudloff's conduct on May 30, 2020.

For reasons already stated, this voluminous material would be – at best – generalized discovery and/or impeachment evidence.

4. Rudloff RFP No. 4 (Dkt. 30-3 at 6): For the time period May 25, 2020 to August 16, 2020, all communications sent or received by you on official and personal accounts and devices (including social media accounts) which use any of the following keywords:

a. Rusanowsky
b. protest
c. "George Floyd"
d. photographer
e. media
f. press
g. BLM
h. "black lives matter"

This is easily the most objectionable of the materials sought. As explained in in Sgt. Rudloff's Response to Plaintiff's motion for discovery, this would require an enormous undertaking on Sgt. Rudloff's behalf to go through every single device and account (voicemails, text messages, personal email, work email, social media accounts) to find communications not only by Sgt. Rudloff, but same *from others*. ECF no. 31, p. 7. Even under general Rule 26 standards, such a request would be an unduly burdensome fishing expedition. Here, the only relevant information that could possibly be contained in this vast search is impeachment evidence. This is not permitted under the Fifth Circuit's jurisprudence on limited discovery for qualified immunity determinations.

Respectfully submitted,

/s/ *David W. Henderson*
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
J. Sebastian Van Coevorden
Texas State Bar No. 24128101
ELLWANGER LAW LLLP
400 S. Zang Blvd. Ste. 600
Dallas, TX 75208
Telephone: (469) 998-6775
Facsimile: (469) 998-6775

Peter B. Steffensen
Texas State Bar No. 24106464
psteffensen@smu.edu
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, TX 75275
Telephone: (214) 768-4077
Facsimile: (214) 768-1611

***Attorneys for Plaintiff***

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

/s/*J. Cheves Ligon*
J. CHEVES LIGON
Senior Assistant City Attorney
Texas State Bar No. 24070147
John.Ligon@Dallas.gov

City Attorney's Office
1500 Marilla Street, Room 7D North
Dallas, Texas 75201
Telephone: 214-670-3519
Telecopier: 214-670-0622

*ATTORNEYS FOR DEFENDANTS.*

## CERTIFICATE OF SERVICE

I certify that on February 3, 2023, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *J. Sebastian Van Coevorden*
J. Sebastian Van Coevorden