IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER RUSANOWSKY, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:22-cv-1132-K |
| THE CITY OF DALLAS and SGT. ROGER A. RUDLOFF, individually and in his official capacity as a Dallas Police Department Police Officer, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Rusanowsky has sued the City of Dallas and one of its police officers (Sgt. Roger A. Rudloff) alleging that the defendants violated his constitutional rights to record the police performing their duties in public, to not be detained without reasonable suspicion, and to not be subjected to warrantless arrest without probable cause. *See* Dkt. No. 1. Rudloff answered, asserting qualified immunity. *See* Dkt. No. 14, ¶ 2.4.1.

The Court then entered an order setting out procedures to consider and resolve Rudloff's entitlement to qualified immunity. *See* Dkt. No. 23. Under this order, Rusanowsky filed a reply under Federal Rule of Civil Procedure 7(a)(7), *see* Dkt. No. 26; Rudloff noticed his intent to move for summary judgment on qualified immunity, *see* Dkt. No. 27; Rusanowsky moved for leave to conduct limited discovery, *see* Dkt. No. 30; and Rudloff responded to the motion for leave, *see* Dkt. No. 31.

The Court then referred the motion for leave to conduct limited discovery to

the undersigned United States magistrate judge for disposition under 28 U.S.C. § 636(a). *See* Dkt. No. 32. And, consistent with the undersigned's order, the parties met and conferred regarding the proposed discovery requests and filed a joint status report (the JSR). *See* Dkt. Nos. 35 & 36. By way of the JSR, Rusanowsky substantially narrows his discovery requests, but Rudloff argues that they are still too broad to be permitted under this circuit's framework that allows for limited qualified immunity discovery where certain requirements are met.

After carefully considering the pleadings, the parties' briefing, and the JSR, the Court, for the reasons and to the extent set out below, conditionally grants in part and denies in part Rusanowsky's motion for discovery as supplemented by the JSR, on the condition that the parties meet and confer regarding specific discovery requests consistent with this order and file a second joint status report by **March 3, 2023**.

**Legal Standards**

"Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 134 (5th Cir. 2021) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). So "a defendant's entitlement to qualified immunity must be determined 'at the earliest possible stage of the litigation.'" *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quoting *Ramirez*, 3 F.4th at 133); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in

litigation.").

And the established procedure under which courts must address qualified immunity, once asserted, therefore "prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." *Ramirez*, 3 F.4th at 134 (citations omitted); *see also Carswell*, 54 F.4th at 310 ("[O]ne of the most important benefits of the qualified immunity defense is 'protection from pretrial discovery, which is costly, time-consuming, and intrusive.'" (quoting *Backe*, 691 F.3d at 648; citation omitted)).

Consequently, all discovery is typically stayed pending a ruling on a defendant's entitlement to qualified immunity. *See Wicks v. Miss. State Employment Servs., Inc.*, 41 F.3d 991, 994-95 (5th Cir. 1995); *see also Zapata v. Melson*, 750 F.3d 481 (5th Cir. 2014); *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012); *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir. 1987); *Webb v. Livingston*, 618 F. App'x 201 (5th Cir. 2015) (per curiam).

But, where a defendant asserts qualified immunity – and the Court is not currently considering a motion to dismiss the complaint (or or any portion of it) on that basis, *see Carswell*, 54 F.4th at 311-12 – the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover only facts that the Court needs to rule on the defendant's entitlement to qualified immunity, *see Wicks*, 41 F.3d at 994.

That is, the United States Court of Appeals for the Fifth Circuit "has established a careful procedure under which a district court may defer its qualified

immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Backe*, 691 F.3d at 648.

Fundamental to this careful procedure is that, regardless how it is asserted, once qualified immunity is asserted in good faith, "the burden is on the plaintiff to demonstrate [its] inapplicability." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc); *see also Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020) ("When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))).

But this careful procedure is not triggered where the assertion of qualified immunity turns "purely on a question of law" or where "the facts upon which" it turns are "not disputed by the parties." *Wicks*, 41 F.3d at 994 n.9 (citations omitted).

And, where appropriate,

> *Zapata* articulates the steps a district court must take in an order *authorizing* limited qualified immunity discovery – to avoid entering an order that would deny the defendant the benefits of the defense. The first step of this procedure requires the Court to find that the complaint alleges facts sufficient to overcome qualified immunity. At the second step, the Court must "identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to qualified immunity." And the third step requires an examination of the specific discovery requests.

*Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 321967, at *2 (N.D. Tex. Feb. 1, 2021) (quoting *Zapata*, 750 F.3d at 485; citation omitted).

Put another way, at the first step, "a plaintiff seeking to overcome QI must

assert facts that, if true, would overcome that defense. It is not enough broadly to seek information that might impeach the defendants' version of events." *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 481 (5th Cir. 2021) (citing *Zapata*, 750 F.3d at 481). So, at step one, the Court must be convinced that the plaintiff's pleadings, "taken as true, overc[o]me the qualified immunity defense" because, before authorizing limited discovery, "this holding must be made explicitly" by the district court. *Zanitz v. Seal*, 602 F. App'x 154, 163 (5th Cir. 2015) (per curiam) (citing *Zapata*, 750 F.3d at 485 n.2). Accordingly, the functional equivalent of carrying the step-one burden would be for a plaintiff's pleadings to demonstrate that a motion to dismiss based on qualified immunity should be denied. *See id.* at 163 n.8.

But, even if the Court holds that sufficient facts have been alleged, a plaintiff will still falter at step two by "fail[ing] to identify any question of fact that the court must resolve before determining QI." *Hutcheson*, 994 F.3d at 481 (citing *Backe*, 691 F.3d at 648); *see also Zanitz*, 602 F. App'x at 163 ("Even a 'limited discovery' order does not satisfy the second step if 'the district court [does] not identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to immunity.'" (citing *Zapata*, 750 F.3d at 484-85)).

Only after a plaintiff passes through these two gates will the Court examine the specific discovery requests proposed to determine if any are narrowly tailored. *See, e.g., Webb*, 618 F. App'x at 209-11; *see also Carswell*, 54 F.4th at 311 (explaining that the purpose of the careful procedure "is *only* to allow the district court to rule on the defendant's assertion of QI; its purpose is *not* to provide a backdoor for plaintiffs

to circumvent the defendant's immunity from suit" and that "where the QI-asserting official determines that any pre-ruling discovery sought or ordered in the district court crosses the line from permissible *Lion Boulous* discovery to impermissible vitiation of the official's immunity from suit, the collateral order doctrine authorizes an immediate appeal" (citations omitted)). And, then – even where "the defendant's entitlement to immunity turns at least partially on a factual question" and the Court "is unable to rule on the immunity defense without clarification of these facts" – any limited discovery order must be "narrowly tailored to uncover only the facts necessary to rule on the immunity defense." *Webb*, 618 F. App'x at 210 (cleaned up).[1]

## Analysis

Rusanowsky, a photojournalist, brings claims under 42 U.S.C. § 1983 alleging that during a protest in downtown Dallas on May 30, 2020 – shortly after the death of George Floyd in Minneapolis – Rudloff violated his rights under the First, Fourth, and Fourteenth Amendments by arresting him without probable cause and while Rusanowsky photographed Rudloff's use of force against two protesters.

As further set out in the Rule 7(a)(7) reply, Rusanowsky alleges that on May

---

[1] *Cf. Webb*, 618 F. App'x at 210 (Contrary to the general rule, "'immediate appeal is available for [qualified immunity] discovery orders which are either avoidable or overly broad.' [But a] district court's discovery order is neither avoidable nor overly broad, and therefore not immediately appealable, when: (1) the defendant's entitlement to immunity turns at least partially on a factual question; (2) the district court is unable to rule on the immunity defense without clarification of these facts; and (3) the discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense." (quoting *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991), then citing *Lion Boulos*, 834 F.2d at 507-08)).

30, he

> was working as a photojournalist for ZUMA Press, Inc., assigned to photograph the protests that arose in Dallas in response to Floyd's murder. Rusanowsky parked his car in downtown Dallas and joined two other journalists to begin documenting the historic events. He carried his professional photography gear, and wore a ZUMA Press baseball cap as well as laminated press credentials from both ZUMA and the National Press Photographers Association. Along with his fellow journalists, Rusanowsky made his way to the Eye Sculpture at 1601 Main Street, where they found police engaging with a large group of protesters.
>
> Rusanowsky and his peers began to follow the group to Reunion Tower, moving toward Interstate 35 on Reunion Boulevard. As Rusanowsky continued his work, a group of protesters began to run up the freeway overpass onto Interstate 35 East. Rusanowsky clearly and visibly did not follow the protestors onto the freeway, but ever-conscious of his responsibility as a journalist to document these historic events, Rusanowsky continued photographing the protesters' ingress. Shortly thereafter, Rusanowsky heard gunfire, and the crowd of protesters began to panic, running toward the freeway exit. Rusanowsky flattened himself against a pillar to stay clear of the crowd. From this vantage point, he saw DPD officers running across the freeway holding paintball guns.
>
> When he felt it was safe to do so, Rusanowsky moved from this pillar to a grassy lot nearby the freeway entrance, where he witnessed a number of individuals carrying someone he believed to be an injured protestor. Rusanowsky moved within roughly ten feet of these individuals to photograph them from a safe distance when [Dallas Police Department (DPD)] officers, including Defendant Rudloff, made contact with them. It was then that Rusanowsky saw Defendant Rudloff shoot Jantzen Verastique point-blank in the chest with a pepper ball. Rusanowsky captured Defendant's use of force in a photograph that would later run on the front page of the Dallas Morning News ….
>
> Rusanowsky photographed other protesters in their encounters with DPD officers, and continued to capture these interactions from his vantage point on the grassy shoulder. As Verastique lay on the ground, stunned by the impact of the pepper ball, another protester, Parker Nevills, was likewise forcefully arrested by DPD officers. A photograph taken by Rusanowsky shows Defendant Rudloff seizing the unarmed Nevills by the hair. Body camera footage later released by DPD shows Defendant Rudloff kneeing Nevills in the stomach after he had been restrained by officers.

With Nevills and Verastique both in DPD custody, Defendant Rudloff then shifted his focus to the journalist visibly documenting his and other DPD officers' use of force against unarmed protesters – Rusanowsky. Defendant Rudloff turned to Rusanowsky, pointed, and shouted, "You're next!"

Rusanowsky was sure he had committed no wrongdoing, and responded to Defendant Rudloff by displaying his laminated press credentials and informing Rudloff that he was a member of the press. "Yeah, yeah," Defendant Rudloff responded in a mocking tone while advancing on Rusanowsky with his hand on his weapon. "Press, press. You're going to jail," he said. Having closed the physical distance between him and Rusanowsky, Defendant Rudloff then physically restrained Rusanowsky, forced him onto the ground, and aided another officer in placing restraints on Rusonowsky. The assisting officer informed Rusanowsky that his cameras and photography equipment, which he uses to earn his living, would be destroyed if the officers felt that the camera and photographic equipment somehow posed a threat. At this time, the cameras and photography equipment contained the photographic evidence of Defendant Rudloff's use of force against Verastique and Nevills.

Neither Defendant Rudloff nor the other officer on scene described the charges for which Rusanowsky was being arrested, ignoring Rusanowsky's multiple requests for an explanation of his arrest. Along with several other protestors, Rusanowsky was removed by officers from the grassy shoulder to a holding area under an overpass, and put into a crowded transport van where he would remain for several hours.

Throughout Rusanowsky's detention, Defendant Rudloff and the DPD officers Rusanowsky spoke with provided no answer to the question of which offenses Rusanowsky was being arrested and charged, despite Rusanowsky's repeated requests. The officers detaining Rusanowsky under the overpass admitted as much, even asking Rusanowsky himself for that information. After spending hours in the back of the crowded transport van, Rusanowsky was ultimately moved to the Lew Sterrett Justice Center, where he was jailed for approximately twenty-six hours.

At his arraignment, Rusanowsky was finally informed that he was being charged with obstruction of a roadway. But multiple photographs of DPD interactions with protesters on the evening of May 30 all show that Rusanowsky was well clear of any roadway both before and at the time of his arrest.

Dkt. No. 26, ¶¶ 3-11 (citations omitted).

Asserting his entitlement to qualified immunity, Rudloff answers that "there was probable cause to believe that [Rusanowsky] had committed a criminal offense, justifying seizure"; that is, "based on all information reasonably available to [him], [Rusanowsky] had been on a nearby highway obstructing traffic." Dkt. No. 14 at 13 (¶ 2.4.2) (further asserting that he "did not intentionally seek out [Rusanowsky] due to his status as a member of the press, threaten him, or otherwise attempt to impede [Rusanowsky's] First or Fourth Amendment rights"); *see also id.* at 14 (¶ 20) ("admit[ting] that protesters marched onto Interstate 35, and, upon information and belief, [Rusanowsky] photographed police-citizen encounters in the grassy roadside shoulder adjacent to a highway off-ramp, an area that the City of Dallas had not approved for marches, demonstrations, or protests"); *id.* at 10 (¶ 88) ("admit[ting] … that on May 20, 2020, [he] was the a [sic] supervising officer on the scene and made the general order that all individuals who had been seen on the highway were to be arrested"); *id.* at 11 (¶ 98) ("admit[ting] that based on the facts and circumstances known to him at the time and his personal observations, and believing that he had probable cause that a criminal offense had occurred, [he] ordered the arrest without a warrant of all persons on the scene who were unlawfully on the highway"); TEX. PENAL CODE § 42.03 (obstruction of a highway or other passageway).

Against this backdrop, the Court first finds that, taken as true, Rusanowsky's pleadings, which here include the reply to the answer ordered by the Court, *see* Dkt.

No. 23, ¶ 3; Dkt. No. 26; FED. R. CIV. P. 7(a)(7),[2] overcome the qualified immunity defense by plausibly alleging that Rudloff acted objectively unreasonably to seize Rusanowsky in violation of the Constitution.

The Court further finds that the pleadings neither reflect that Rudloff's assertion of qualified immunity turns purely on a question of law nor show that the parties agree on the facts on which it turns. And the pleadings identify a question of fact that must be resolved before the Court may rule on Rudloff's assertion of qualified immunity – whether Rusanowsky's warrantless arrest was, at least arguably, supported by probable cause.

That is, if the Court accepts Rusanowsky's well-pled version of events, he never obstructed the highway, yet he was arrested for doing just that, while Rudloff asserts that he is entitled to qualified immunity on the Section 1983 claims because there was probable cause to arrest Rusanowsky for obstructing the highway. *See, e.g.*, Dkt. No. 26 at 11 (¶ 31) ("Rusanowsky denies that he committed a criminal offense justifying seizure. At no time did Rusanowsky obstruct traffic on any roadway on May

---

[2] *See also Fisher v. Dall. Cnty.*, 299 F.R.D. 527, 532 (N.D. Tex. 2014) ("When a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff. Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, when a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail pursuant to Rule 7(a). The reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury. The case should not be allowed to proceed unless plaintiffs can assert specific facts that, if true, would overcome the defense." (cleaned up)).

30, 2020. Numerous photos taken of Rusanowsky show that at the relevant times, he was in positions clear of the roadways and away from the officers on the scene. Furthermore, at no time did Defendant or any other officer request that Rusanowsky move from his location on the grassy shoulder." (citations omitted)).

"Probable cause is a 'practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003); internal quotation marks omitted). "[C]ourts must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Id.* (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 586, 588 (2018)).

And, "while 'probable cause is not a high bar,'" *id.* (quoting *Wesby*, 138 S. Ct. at 586), "[t]he facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee," *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted); *see also Pringle*, 540 U.S. at 371 ("'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' and that the belief of guilt must be particularized with respect to the person to be searched or seized." (cleaned up; citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979))); *Ybarra*, 444 U.S. at 91 ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." (citation omitted)).

In the specific context of qualified immunity, "'[t]here must not even "arguably" be probable cause for the ... arrest for immunity to be lost.' In other words, 'if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply.'" *McCoy v. Hous. Auth. of New Orleans*, 714 F. App'x 322, 326 (5th Cir. 2017) (per curiam) (quoting *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)). *Cf. Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997) ("The objective standard of *Harlow[ v. Fitzgerald*, 457 U.S. 800 (1982),] applies to claims of unlawful search and arrest such as this, in which the plaintiff alleges that the officer who requested the warrant intentionally or recklessly sought an affidavit without probable cause. 'Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost.' The crucial issue 'is whether a reasonably well-trained officer in [the defendant's] position would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant.' The officer 'will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.' In other words, there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." (citations omitted)), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997).

In *Brown*, for example, the Fifth Circuit agreed with the district court that the defendants were entitled to qualified immunity, refusing to conclude that "the

testimony of several eyewitnesses, corroborated in some aspects by physical evidence, did not even arguably create probable cause," because

> [q]ualified immunity "gives ample room for mistaken judgements," by protecting "all but the plainly incompetent or those who knowingly violate the law." That is the balance that courts have struck between compensating wronged individuals for deprivation of constitutional rights and frustrating officials in discharging their duties for fear of personal liability.

*Brown*, 243 F.3d at 190 (footnotes omitted); *accord Joseph*, 981 F.3d at 328.

So Rudloff may still be entitled to qualified immunity even if the Court were to find, looking back at the events of May 30, 2020, that there was not probable cause for Rusanowsky's arrest, if Rudloff's conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)); *see, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." (citation omitted)).

But, as the excerpts from the pleadings reflect, Rudloff has, so far, offered mainly conclusions to support his assertion that there was probable cause (and therefore that he is entitled to qualified immunity). And, because Rusanowsky's well-pled allegations reflect the opposite, this question of fact – that there arguably was probable cause – that the Court must resolve before determining qualified immunity allows limited discovery as to the facts then available to Rudloff, to determine if a

reasonable officer could have concluded that, at that time, there was probable cause based on those facts.

And those facts – what Rudloff relied on to make the probable cause determination – are "peculiarly within [his] knowledge." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc) (explaining that, in *Anderson v. Creighton*, the United States Supreme Court "explained that objective legal reasonableness would be empty of meaning if the level of generality with which the law was described were not particularized to the question of whether it was clear 'that a reasonable official would understand that what he is doing violates that right.' Justice Scalia stressed that the inquiry was fact-specific. The Court 'emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation,' but acknowledged that discovery may be necessary. He conceded that in some cases, such as in search cases, probable cause and exigent circumstances will often turn on facts peculiarly within the knowledge of the defendants. And if there are conflicts in the allegations regarding the actions taken by the police officers, discovery may be necessary. Even then, the discovery 'should be tailored specifically to the question of [defendants'] qualified immunity.'" (quoting *Anderson*, 483 U.S. at 640, 646 n.6)).[3]

---

[3] *Cf. Hinojosa v. Livingston*, 807 F.3d 657, 671-72 (5th Cir. 2015) (observing that, in the context of claims of deliberate indifference, the defendants' "knowledge is [ ] highly relevant to qualified immunity, because it bears heavily on the reasonableness of their actions" but that "[t]he reasonableness analysis must be different from the deliberate-indifference analysis, because '[o]therwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine'"; thus, "'[a]dditional facts ... are particularly important when

- 14 -

The Court finds this fact issue must be resolved before the Court may rule on Rudloff's assertion of qualified immunity even taking account of Rudloff's argument that "[n]othing in Plaintiff's Complaint disputes that he had been on the highway." Dkt. No. 36 at 10. Rusanowsky's Rule 7(a)(7) reply alleges that he "clearly and visibly did not follow the protestors onto the freeway, but ever-conscious of his responsibility as a journalist to document these historic events, Rusanowsky continued photographing the protesters' ingress"; that thereafter "Rusanowsky flattened himself against a pillar to stay clear of the crowd"; that, "[w]hen he felt it was safe to do so, Rusanowsky moved from this pillar to a grassy lot nearby the freeway entrance, where he witnessed a number of individuals carrying someone he believed to be an injured protestor," and then "moved within roughly ten feet of these individuals to photograph them from a safe distance." Dkt. No. 26, ¶¶ 3-6. Assuming (as Rudloff seems to) that any entrance onto the freeway might support a belief in probable cause to arrest Rusanowsky for obstruction of a highway, the fact issue of whether Rusanowsky's warrantless arrest was, at least arguably, supported by probable cause remains.

Rusanowsky appears to also raise a second question of fact that implicates the exception to the requirement that, "[t]o prevail on a First Amendment retaliation claim, [ ] plaintiffs must plead and prove the absence of probable cause." *Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715,

---

evaluating the [reasonableness] prong of the qualified immunity test'" (quoting *Webb*, 618 F. App'x at 210)).

1725 (2019)). In the Rule 7(a)(7) reply, he alleges that he "is not aware of any other journalist from the grassy shoulder who was also arrested, despite those other journalists working in proximity to [him] while he was on the grassy shoulder and photographing the protest." Dkt. No. 26, ¶ 25. But Rusanowsky's alleged scenario – the nonarrest of others who, like him, were exercising rights protected by the First Amendment – does not seem to fit (at least for the limited purpose of this order) into the "'narrow' exception to this rule where the 'plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Roy*, 950 F.3d at 255 n.4 (quoting *Nieves*, 139 S. Ct. at 1727).

So the Court turns to the narrowed discovery requests currently proposed. *See* Dkt. No. 36 at 4-5. At least some of Rudloff's body camera footage from May 30 could be relevant based on the scope set out above. And, in the event there was coordination between Rudloff and other officers on May 30, the facts known by other officers in support of probable cause could also be relevant. *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) ("Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." (citing *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992))).

But all requests as currently drafted are too broad to uncover only facts that the district court needs to rule on Rudloff's entitlement to qualified immunity. So,

because the record reflects that the parties have worked cooperatively before, the Court orders them to again meet and confer after considering this order, to discuss requests that fit into the narrow parameters outlined above, and file a second joint status report by **March 3, 2023**.

## Conclusion

The Court CONDITIONALLY GRANTS IN PART AND DENIES IN PART Plaintiff Christopher Rusanowsky's motion for discovery as supplemented [Dkt. Nos. 30 & 35]. Consistent with this order as to the scope of limited discovery that is narrowly tailored to uncover only facts that the district court needs to rule on Defendant Roger A. Rudloff's entitlement to qualified immunity, the parties are ORDERED to meet and confer regarding specific discovery requests and file a second joint status report by **March 3, 2023**.

SO ORDERED.

DATED: February 9, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE