IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER RUSANOWSKY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1132 |
| | § | |
| THE CITY OF DALLAS, SGT. ROGER | § | |
| A. RUDOLF, Individually and in | § | |
| his official capacity as a Dallas Police | § | |
| Department Police Officer, | § | |
| | § | |
| *Defendants*. | § | |

---

**DEFENDANT SGT. ROGER A. RUDLOFF'S
BRIEF IN SUPPORT OF HIS MOTION
FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

---

TAMMY L. PALOMINO
Interim City Attorney

*s/ J. Cheves Ligon*
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallas.gov

Dallas City Attorney's Office
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:     214-670-3519
Facsimile:      214-670-0622

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BRIEF PROCEDURAL HISTORY .................................................................2

III.    STATEMENT OF UNDISPUTED FACTS ....................................................3

       a.    Plaintiff's allegations in the Complaint ......................................3

       b.    Plaintiff's warrant and arrest sheet. ...........................................5

       c.    Sgt. Rudloff's testimony. .............................................................6

       d.    DPD witness testimony ................................................................8

       e.    Plaintiff's testimony. ....................................................................9

IV.     APPLICABLE LEGAL STANDARDS ............................................................10

       a.    Legal Standard for Motions for Summary Judgment ...............10

       b.    The qualified immunity defense alters the burden of proof
           on summary judgment.................................................................12

V.      ARGUMENTS AND AUTHORITIES..............................................................15

       a.    Sgt. Rudloff is entitled to qualified immunity on Plaintiff's
           Count I and Count II causes of action related to the First,
           Fourth, and Fourteenth Amendments because Sgt. Rudloff
           never violated Plaintiff's constitutional rights..........................15

       b.    Sgt. Rudloff is entitled to qualified immunity on Plaintiff's
           count III cause of action related to the Fourth and Fourteenth
           Amendments because Sgt. Rudloff never violated Plaintiff's
           constitutional rights....................................................................30

       c.    None of Sgt. Rudloff's actions violated clearly established
           law at the time. ...........................................................................32

VI.     CONCLUSION...................................................................................................34

      CERTIFICATE OF SERVICE .........................................................................35

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton*,
    483 U.S. 635 (1987)........................................................................................... 13, 14

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................................................ 10

*Arizmendi v. Gabbert*,
    919 F.3d 891 (5th Cir. 2019) ............................................................................... 17

*Ashcroft v. al-Kidd*,
    563 U.S. 731 ...................................................................................... 12, 13, 33, 37

*Babb v. Dorman*,
    33 F.3d 472 (5th Cir. 1994) ................................................................................. 14

*Bell v. Wolfish*,
    441 U.S. 520 (1979)................................................................................................ 16

*Branzburg v. Hayes*,
    408 U.S. 665 (1972)................................................................................................ 28

*Brown v. Callahan*,
    623 F.3d 249 (5th Cir. 2010) ............................................................................... 12

*Brown v. Lyford*,
    243 F.3d 185 (5th Cir.2001) ................................................................................ 16

*Castellano v. Fragozo*,
    352 F.3d 939 (5th Cir. 2003) ............................................................................... 34

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................ 9, 10, 11

*Charles v. Grief*,
    522 F.3d 508 (5th Cir. 2008) ............................................................................... 14

*Cole v. Carson*,
    802 F.3d 752 (5th Cir. 2015) ........................................................................... 18, 19

*Crane v. City of Arlington, Tex.*,
    542 F. Supp. 3d 510 (N.D. Tex. 2021) ................................................................ 38

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)........................................................................................... 28, 30

*Davis v. McKinney*,
    518 F.3d 304 (5th Cir. 2008) ................................................................. 14

*Devenpeck v. Alford*,
    543 U.S. 146 (2004) .............................................................................. 30

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) ....................................................................... 13, 17

*Duckett v. City of Cedar Park*,
    950 F.2d 272 (5th Cir. 1992) ................................................................. 10

*Eason v. Thaler*,
    73 F.3d 1322 (5th Cir. 1996) ................................................................. 11

*Evans v. Ball*,
    168 F.3d 856 (5th Cir. 1999) ................................................................. 15

*Florida v. Harris*,
    568 U.S. 237 (2013) .............................................................................. 17

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) ........................................................... 10, 11

*Foster v. City of Lake Jackson*,
    28 F.3d 425 (5th Cir. 1994) ................................................................... 13

*Freeman v. Gore*,
    483 F.3d 404 (5th Cir. 2007) ................................................................. 27

*Gassner v. City of Garland*,
    864 F.2d 394 (5th Cir. 1989) ................................................................. 11

*Gibson v. Rich*,
    44 F.3d 274 (5th Cir. 1995) ................................................................... 14

*Glenn v. City of Tyler*,
    242 F.3d 307 (5th Cir.2001) .................................................................. 16

*Glik v. Cunniffe*,
    655 F.3d 78 (1st Cir. 2011) ................................................................... 28

*Gonzales v. Hunt Cnty. Sheriff's Dep't*,
    No. 3:20-CV-3279-K, 2021 WL 2337143 (N.D. Tex. June 8, 2021) ................... 35

*Gonzalez v. Trevino*,
    42 F.4th 487 (5th Cir. 2022) ................................................................. 31

*Goodson v. City of Corpus Christi*,
  202 F.3d 730 (5th Cir. 2000) ........................................................................ 27

*Gregoire v. Biddle*,
  177 F. 2d 579 (C.A.2 1949) ........................................................................ 30

*Griggs v. Brewer*,
  841 F.3d 308 (5th Cir. 2016) ........................................................................ 12

*Grosjean v. Am. Press Co.*,
  297 U.S. 233 (1936) ........................................................................ 27

*Haggerty v. Tex. S. Univ.*,
  391 F.3d 653 (5th Cir. 2004) ........................................................................ 17

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ........................................................................ 11, 13, 30

*Hinojosa v. Livingston*,
  807 F.3d 657 (5th Cir. 2015) ........................................................................ 20

*Ikhinmwin v. Rendon*,
  No. 5:16-CV-184-OLG, 2017 WL 10768508 (W.D. Tex. Dec. 20, 2017) ........................................................................ 22

*Illinois v. Rodriguez*,
  497 U.S. 177 (1990) ........................................................................ 16

*Kentucky v. King*,
  563 U.S. 452 (2011) ........................................................................ 33

*Kohler v. Englade*,
  470 F.3d 1104 (5th Cir. 2006) ........................................................................ 21

*Luce v. Interstate Adjusters, Inc.*,
  26 S.W.3d 561 (Tex. App.—Dallas 2000) ........................................................................ 35

*Lynch Props. v. Potomac Ins. Co.*,
  140 F.3d 622 (5th Cir. 1998) ........................................................................ 11

*Malley v. Briggs*,
  475 U.S. 335 (1986) ........................................................................ 14

*Martin v. Thomas*,
  973 F.2d 449 (5th Cir. 1992) ........................................................................ 17

*Martinez v. Smith*,
  200 F.3d 816 (5th Cir. 1999) ........................................................................ 2

*Martinez-Cornelio v. State,*
    No. 06-19-00061-CR, 2019 WL 4891710 (Tex. App. Oct. 4, 2019)...................................... 25

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986)........................................................................................ 11

*McBride v. State,*
    359 S.W.3d 683 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) .................................. 26

*McClendon v. City of Columbia,*
    305 F.3d 314 (5th Cir. 2002) ............................................................................ 12

*Melton v. Waxahachie Police Dep't*
    , No. 3:21-CV-2854-K-BH, 2022 WL 3636616 (N.D. Tex. Aug. 8, 2022) ......................... 35

*Miller v. Salvaggio,*
    No. SA-20-CV-00642-JKP, 2021 WL 3474006 (W.D. Tex. Aug. 6, 2021) ......................... 29

*Morgan v. Chapman,*
    969 F.3d 238 (5th Cir. 2020) ............................................................................ 37

*Nieves v. Bartlett,*
    139 S. Ct. 1715 (2019)............................................................... 29, 30, 33, 35

*O'Dwyer v. Nelson,*
    310 F. App'x. 741 (5th Cir.2009) ....................................................................... 18

*Parm v. Shumate,*
    513 F.3d 135 (5th Cir. 2007) ............................................................................ 17

*Payton v. Town of Maringouin,*
    No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) .................................... 35

*Pearson v. Callahan,*
    555 U.S. 223 (2009)........................................................................... 12, 14, 15

*Pierce v. Smith,*
    117 F.3d 866 (5th Cir. 1997) ............................................................................ 13

*Poole v. City of Shreveport,*
    691 F.3d 624 (5th Cir. 2012) ............................................................................ 15

*Reichle v. Howards,*
    566 U.S. 658 (2012)....................................................................................... 37

*Roy v. City of Monroe,*
    950 F.3d 245 (5th Cir. 2020) ............................................................................ 33

*Sam v. Richard*,
  887 F.3d 710 (5th Cir. 2018) ........................................................................................ 18

*Saucier v. Katz*,
  533 U.S. 194 (2001) ...................................................................................................... 14

*Spiller v. Tex. City*,
  130 F.3d 162 (5th Cir.1997) ......................................................................................... 16

*State v. Patterson*,
  291 S.W.3d 121 (Tex. App.—Amarillo 2009, no pet.) .................................................. 26

*Thomas v. Gage et al.*,
  No. 4:21-CV-692-P, 2022 WL 17586547 (N.D. Tex. Oct. 17, 2022) ................................ 29

*Topalian v. Ehrman*,
  954 F.2d 1125 (5th Cir. 1992) .................................................................................... 9, 10

*Turner v. Lieutenant Driver*,
  848 F.3d 678 (5th Cir. 2017) ....................................................................................... 27

*Winfrey v. Rogers*,
  901 F.3d 483 (5th Cir. 2018) ....................................................................................... 34

*Zemel v. Rusk*,
  381 U.S. 1 (1965) .......................................................................................................... 27

 **STATUTES**

42 U.S.C. § 1983 .............................................................................................................. 38

Tex. Penal Code Ann. § 42.02 ......................................................................................... 23

Tex. Penal Code Ann. § 42.03 ......................................................................................... 19

Tex. Transp. Code Ann. § 542.301 .................................................................................. 26

Tex. Transp. Code Ann. § 552.006 ............................................................................. 24, 26

**RULES**

Local Rule 56.6(b) ............................................................................................................ 1

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Sgt. Roger A. Rudloff ("Sgt. Rudloff" or "Defendant") submits the following Brief in Support of his Motion for Summary Judgment Based on Qualified Immunity (ECF No. 48.) Sgt. Rudloff incorporates by reference Defendant's Appendix in Support of Motion for Summary Judgment Based on Qualified Immunity ("App."), which is filed separately in compliance with Local Rule 56.6(b).

## I.    INTRODUCTION

Plaintiff Christopher Rusanowsky ("Rusanowsky" or "Plaintiff"), a photojournalist, was arrested in 2020 while covering George Floyd-related protests in Dallas. Plaintiff's Complaint alleges that Sgt. Rudloff deprived him of his constitutional rights under the First, Fourth, and Fourteenth Amendments by arresting him for covering the news. However, the undisputed evidence shows that Dallas police officers had probable cause to arrest Plaintiff based on their personal observations of him engaged in criminal activity constituting misdemeanor offenses under the Texas Penal Code and the Texas Transportation Code. While the First Amendment protects the rights of newsgathering journalists to record police activity and to report newsworthy events, they do not have a constitutional right to special treatment. The competent summary judgment evidence establishes that Dallas police officers had sufficient probable cause to arrest Plaintiff based on the totality of the facts and circumstances within their knowledge at the time of arrest. Under Supreme Court and Fifth Circuit precedent, probable cause defeats Plaintiff's constitutional claims, and Plaintiff cannot point to evidence to raise a genuine issue of material fact that probable cause did not exist for his arrest. Therefore, Sgt. Rudloff is entitled to summary judgment on his qualified immunity defense.

Moreover, even if Dallas police officers lacked probable cause to arrest Plaintiff, Plaintiff cannot establish that Sgt. Rudloff arrested or retaliated against him for engaging in protected

activity.

Lastly, Plaintiff has sued the wrong person. The summary judgment evidence shows that Sgt. Rudloff did not order any Dallas police officers to arrest Plaintiff, that Sgt. Rudloff did not personally arrest Plaintiff, that Sgt. Rudloff did not charge Plaintiff with any crime, and that Sgt. Rudloff did not provide sworn testimony required for Plaintiff's arrest warrant and charge. The summary judgment evidence shows that other police officers performed those acts.

Plaintiff cannot establish or raise any genuine issues of material fact that Sgt. Rudloff deprived him of his constitutional rights. Therefore, Sgt. Rudloff is entitled to summary judgment on his qualified immunity defense.

## II.    BRIEF PROCEDURAL HISTORY

On May 23, 2022, Plaintiff filed his Complaint. ECF No. 1 ("Complaint.") On August 30, 2022, this Court issued its "Order – Qualified Immunity" that administratively closed this lawsuit and set forth the procedures for, *inter alia*, seeking leave for discovery and the filing of dispositive motions. ECF No. 23. On October 31, 2022, Sgt. Rudloff filed his Notice of Intent to Move for Summary Judgment. ECF No. 27. On November 21, 2022, Plaintiff filed his Motion to Conduct Limited Discovery, after which Sgt. Rudloff filed his Response. ECF Nos. 30-31. This Court reset deadlines for any summary judgment motions to be filed 30 days after Plaintiff received discovery responses from Sgt. Rudloff or from the date this Court denied discovery. ECF No. 34.

On March 30, 2023, this Court granted in part and denied in part the City's Motion to Dismiss. ECF No. 40. The Court dismissed without prejudice Plaintiff's "failure to train" claim but granted him 30 days to file an amended Complaint. *Id*. p. 19. Plaintiff did not do so. This Court

denied the City's motion as to Plaintiff's "failure to supervise/discipline" claim.[1] *Id.* pp. 17-18.

On April 6, 2023, both Plaintiff and Sgt. Rudloff filed notices with the Court that they had complied with the Court's discovery instructions. ECF Nos. 42-43. Thus, both Plaintiff and Sgt. Rudloff's summary judgment motions then became due on May 8, 2023.

### III.    STATEMENT OF UNDISPUTED FACTS

The Parties took no depositions in this case and exchanged only limited discovery. The following facts are taken from Plaintiff's Complaint, Declarations from Dallas Police Department ("DPD"), the documents associated with Plaintiff's arrest, Plaintiff's statement made to the DPD Public Integrity Unit, and Plaintiff's response to this Court's ordered interrogatory.

#### a.   Plaintiff's allegations in the Complaint

Plaintiff claims that on May 20, 2022, he was on assignment as a journalist to cover protests related to the death of George Floyd. Compl. ⁋ 1. He claims he "worked in close vicinity to three other journalists." *Id.* ⁋ 19. Plaintiff alleges he took pictures of officers making arrests of, and the deployment of a PepperBall launcher at, protestors who were on a grassy shoulder near a highway. *Id.* ⁋⁋ 20-21. Sgt. Rudloff, Plaintiff alleges, was the individual who deployed the PepperBall at a protestor. *Id.* The Complaint claims that after Plaintiff took pictures of uses of force, Sgt. Rudloff "turned in the direction" of Plaintiff and shouted, "you're next!" *Id.* ⁋ 24. Plaintiff claims Sgt. Rudloff "responded mockingly" to Plaintiff's claims of being a press member and said, "You're going to jail." *Id.* ⁋ 27. Plaintiff also alleges:

> Upon the order of Defendant Sgt. Rudloff, who was the supervising officer at the scene, another officer quickly forced Rusanowsky onto his stomach and cuffed his

---

[1] Plaintiff cannot maintain a section 1983 action against the City unless he first establishes there was a *constitutional* violation. *Martinez v. Smith*, 200 F.3d 816 (5th Cir. 1999) (holding that plaintiff could not "show any constitutional injury that is attributable to the county" because she failed to "show any constitutional violation by the individual defendants.") Therefore, if this Court finds Sgt. Rudloff did not violate Plaintiff's constitutional rights, the remaining cause of action against the City must be dismissed as well.

hands behind his back. While cuffed and detained, Rusanowsky was warned that his cameras, containing the photographic evidence of Defendant Sgt. Rudloff's use of force against Verastique and Nevills, would be destroyed if the officers felt that they were a threat.

*Id.* ¶ 28.

After a period of detainment at the scene, Plaintiff claims he was informed that he was being charged with "obstruction of a highway in violation of the law." *Id.* ¶¶ 30-32. The Complaint does not specifically claim Plaintiff had not been on the highway with the protestors. Instead, it claims the following:

- "When protesters marched onto Interstate 35, the journalists documented it." *Id.* ¶ 20.

- His arrest for obstructing the highway was "surprising as Rusanowsky first saw Defendant Sgt. Rudloff and the other arresting officers when he was on the grassy shoulder, well away from the highway." *Id.* ¶ 32.

- "Multiple photographs of the arrest taken by a Dallas Morning News photographer and a local student photojournalist all show that Rusanowsky was well clear of any roadway at the time of his arrest, indicating there was no probable cause to justify Rusanowsky's arrest for highway obstruction under Texas law. In fact, as he photographed the arrest of Verastique, Rusanowsky was clearly located farther from a roadway than Defendant Sgt. Rudloff himself." *Id.* ¶ 33.

Plaintiff claims he was subsequently charged with "riot participation." *Id.* ¶ 37. Plaintiff was apparently released after 26 hours at the Dallas County jail, and later "learned that authorities were dropping the charges against him." *Id.* ¶¶ 48-49.

Plaintiff's Complaint lodges three causes of action against Sgt. Rudloff pursuant to section 1983:

(1) "Violation of [Plaintiff's] First and Fourteenth Amendment Rights." *Id.* ¶¶ 86-95;

Plaintiff's first cause of action claims Plaintiff's First Amendment rights were violated when he was allegedly arrested for taking pictures of police activity. *Id.* ¶¶ 88-89. Plaintiff claims he was singled out from other journalists and arrested in retaliation for taking photographs. *Id.* ¶¶

88-92.

    (2) "Violation of [Plaintiff's] Fourth and Fourteenth Amendment Rights." *Id.* ¶¶ 96-103.

    Plaintiff's second cause of action claims Plaintiff was arrested without probable cause for either obstruction of the highway or riot participation. *Id*. ¶¶ 98-100.

    (3) "Violation of [Plaintiff's] Fourth and Fourteenth Amendment Rights." *Id.* ¶¶ 104-10.

    Plaintiff's final cause of action claims that "[w]hen Defendant Sgt. Rudloff ordered Rusanowsky to be arrested without probable cause, he initiated a malicious prosecution against Rusanowsky . . ." *Id.* ¶ 105. Plaintiff claims his charge of riot participation was without probable cause "with the intent to chill and prevent" his exercise of his constitutional rights. *Id.* ¶ 109.

### b. Plaintiff's warrant and arrest sheet.

    Plaintiff was arrested on May 30, 2020. (App. 15-17.) Sgt. Rudloff was not the arresting officer; Officer Thomas Phillip Hoffman was. *Id*. The following Affidavit for Arrest Warrant sworn out by Officer Hoffman supplied the basis for Plaintiff's arrest with information obtained from another officer, DPD Sgt. Scott Transou:

Affiant's belief is based upon the following facts and information which Affiant received from:

☑ HOFFMAN,THOMAS PHILLIP , a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose other information Affiant believes to be credible.

\*\*\* NO BWC \*\*\*
CHARGE 1: OBSTRUCT HIGHWAY PASSAGEWAY (PC 42.03) M/B

ON SATURDAY, MAY 30, 2020, AT APPROXIMATELY 10:00PM, ARRESTED PERSON (AP) CHRISTOPHER RUSANOWSKY OBSTRUCTED A HIGHWAY AND REFUSING TO LEAVE AFTER RECIEVING VERBAL COMMANDS TO LEAVE THE ROADWAY BY LOUD SPEAKER AT, 1700 COMMERCE ST, DALLAS, DALLAS COUNTY TEXAS.

NARRATIVE:
ON SATURDAY, MAY 30, 2020, ARRESTING OFFICER T.HOFFMAN 11613, WAS ASSIGNED TO A LARGE PROTEST AT, 1700 Commerce ST, DALLAS, DALLAS COUNTY, TEXAS.
ARRESTING OFFICER Sgt Transou ▇▇▇▇OBSERVED AP CHRISTOPHER RUSANOWSKY STANDING IN THE ROADWAY, AFTER ARRESTING OFFICERS ORDERED CHRISTOPHER RUSANOWSKY TO UTILIZE THE SIDEWALKS.
AP CHRISTOPHER RUSANOWSKY WAS A WILLING PARTICIPATE IN AN ASSEMBLAGE OF SEVEN OR MORE PERSONS WHICH RESULTED IN A RIOT, AND REFUSED TO FOLLOW LAWFUL ORDERS OF VERBAL COMMANDS GIVEN BY ARRESTING OFFICER Sgt Transou GIVEN OVER LOUD SPEAKER TO DISPERSE AND LEAVE THE ROADWAY.
THE AP CHRISTOPHER RUSANOWSKY WAS TAKEN INTO CUSTODY AND SUBSEQUENTLY TRANSPORTED TO DALLAS COUNTY JAIL.
AP CHRISTOPHER RUSANOWSKY WAS IDENTIFIED BY HIS TEXAS ▇▇▇▇▇▇
TLETS REVEALED THERE WERE NO ENHANCABLE PRIOR CONVICTIONS.

(App. 13.)

The morning after Plaintiff's arrest, the DPD's Incident Data Sheet Report also indicates that Officer Hoffman was the reporting officer. (App. 243-47.) The supervising officer is listed as Teriann Mitchell. *Id*. Here, Plaintiff's offense is coded "Riot Participation" per Texas Penal Code 42.02(A). *Id.*

### c. Sgt. Rudloff's testimony.

Sgt. Rudloff produced a Declaration in support of his summary judgment motion, and his testimony is as follows. (App. 1-3) Sgt. Rudloff was the supervisor on the scene of the incident. (App. 2.) Police radio traffic informed Sgt. Rudloff that protestors had "shut down" I-35 in Dallas. (App. 1.) On the way to the scene, Sgt. Rudloff witnessed hundreds of people on the highway, blocking it. *Id.* "We could see these individuals on the freeway defacing vehicles, such as breaking vehicle windows and spray-painting multiple vehicles. When we arrived on the west side of I-35 South, I still saw individuals blocking I-35." *Id.* Sgt. Rudloff and several other officers parked

6

their cars on the west side of I-35 and began moving east to "get them off the freeway and to stop them from damaging vehicles, as well as to prevent potential violence." *Id*. Many within the group on the freeway began throwing rocks, glass bottles, full water bottles, and other items at the group of officers. *Id*. Individuals within the group were shouting insults, like "Fuck the police" and "fuck 12." *Id*. These bottles and rocks began hitting at or near the officers. *Id*.

Sgt. Rudloff specifically witnessed Mr. Rusanowsky on the highway. *Id*.

By this point, Sgt. Rudloff did not have clear direction from DPD command staff about whether to arrest any of the individuals they had seen on the highway or simply move on to deploy police resources elsewhere. *Id*. Sgt. Rudloff then radioed DPD command staff and said something to the effect of, "Someone is going to need to clarify what we do with the people on the freeway." *Id*. DPD Chief Thomas Castro, who had direct authority over Sgt. Rudloff, came on police radio and said something to the effect of "We need to round those folks up," meaning Sgt. Rudloff and the officers at the scene were commanded to start arresting these individuals. *Id*.

Once Sgt. Rudloff and the other officers were on the east side of I-35, they began arresting individuals who had been out on the highway. *Id*. Another officer, Senior Corporal Pillar, arrested Plaintiff. (App. 2.) Senior Corporal Pillar informed Sgt. Rudloff that Plaintiff was putatively a journalist. *Id*. This was the first time Sgt. Rudloff had any knowledge Plaintiff was a journalist. *Id*. Sgt. Rudloff told Plaintiff that he still had no right to have been out on the highway. *Id*.

Sgt. Rudloff never filled out any reports regarding Plaintiff and had no idea who ultimately charged Plaintiff. *Id*. Sgt. Rudloff did not know what crime, if any, Plaintiff was later charged with. *Id*. Sgt. Rudloff thereafter moved onto "other scenes of violent rioting." *Id*. Sgt. Rudloff never intentionally sought to restrict anyone's constitutional rights, and only acted to move violent protestors off I-35. *Id*.

### d. DPD witness testimony

Several of the DPD officers present at the scene provided declarations. Their testimony is as follows.

### i. Senior Corporal David Pillar

Senior Corporal Pillar of the DPD was with Sgt. Rudloff on May 30, 2020. (App. 7-8.) Senior Corporal Pillar witnessed hundreds of protestors on I-35. (App. 7.) He likewise saw many individuals on the highway defacing vehicles and breaking vehicle windows. *Id*. With Sgt. Rudloff, Senior Corporal Pillar began moving east onto the freeway to clear the individuals from the freeway and stop them from defacing vehicles. *Id*. People within the group on the freeway began cursing at the police and throwing objects at them. *Id*. The officers then began arresting the individuals on a grass section on the side of I-35 who had been on the freeway. *Id*.

> The small group we encountered on the grass appeared to be coming back to the highway. I recall seeing a man with two cameras within the group; at one point, he was in front of me on I-35. I took notice of this because members of the press usually stand to the side of crime scenes and police interactions with suspects. I later learned this was a photographer named Chris Rusanowsky. I arrested him.

*Id*.

As part of DPD arrest practice and General Orders, officers are to take large items or items of value and place them in the DPD property room for safekeeping. *Id*. Officers took Plaintiff's camera only for that reason. *Id*. They never attempted to erase any pictures or tamper with Plaintiff's camera. (App. 7-8.) In fact, the officers placed Plaintiff's camera specifically in the back of a patrol vehicle where officers kept their own duty bags to ensure the cameras were not damaged. (App. 8.) All the people arrested at the scene were arrested for obstructing the highway and other crimes, not for exercising their rights to protest or cover the news. *Id*.

### ii. Senior Corporal Russell Barrett.

Senior Corporal Barrett of the DPD was with Sgt. Rudloff on May 30, 2020. (App. 4.)

Senior Corporal Barrett witnessed hundreds of protestors on I-35. *Id*. He likewise saw individuals

on the highway defacing vehicles and breaking vehicle windows. *Id*. With Sgt. Rudloff, Senior

Corporal Barrett began moving east onto the freeway to clear the individuals from the freeway and

stop them from defacing vehicles. *Id*. People within the group on the freeway began cursing at the

police and throwing objects at them. *Id*.

> The crowd began to move east off the freeway after we began our attempt to clear
> the freeway. Once we were on the east side of I-35 on the grass, I was addressing a
> crowd that had been on the freeway that was using a wall as cover while throwing
> rocks, bottles, and other materials at us. Another group of individuals then came up
> from the freeway over the guardrails of I-35 towards us. This group included the
> photographer I later learned was Mr. Rusanowsky, whom I also saw coming from
> the freeway over the guardrails.

*Id*.

The officers then began arresting the individuals on a grass section on the side of I-35 who

had been on the freeway. *Id*. Senior Corporal Barrett never witnessed anyone obstructed from

exercising their rights to protest or cover the news. (App. 5.)

### e. Plaintiff's testimony.

Per this Court's instruction, Plaintiff was required to respond to Sgt. Rudloff's proposed

interrogatory:

> Please state whether, on May 30, 2020, you ever walked on a public
> freeway, highway, or street from the time you "parked [your] car in downtown
> Dallas and joined two other journalists to begin documenting the historic events"
> to when you were arrested. Include in your answer whether you were on I-35 or
> any of its adjacent roads and not specifically on a crosswalk.

ECF No. 39, pp. 3-4.

Plaintiff submitted the following verified answer:

**RESPONSE**: Plaintiff objects to this interrogatory as overbroad to the extent it requests information outside the 8:15 p.m. to 8:55 p.m. period that the parties agreed is the narrow window of time relevant to Defendant Rudloff's claim of qualified immunity.

Plaintiff objects to this interrogatory as vague, ambiguous, and overbroad to the extent it asks Plaintiff to recall each and every "public freeway, highway, or street" Plaintiff traversed during an approximately two hour period.

Plaintiff objects to this interrogatory as vague and ambiguous because it fails to specify whether the definition of "public freeway, highway, or street" includes adjacent sidewalks, shoulders, or other areas that are intended for pedestrian use and/or not intended for normal vehicular travel.

Subject to and without waiving Plaintiff's objections, Plaintiff answers as follows:

Plaintiff stepped onto the I-35 improved shoulder and walked tightly along the shoulder's outer barrier for approximately one minute between 8:31 p.m. and 8:32 p.m. on May 30, 2020.

(App. 9-10.)

## IV.    APPLICABLE LEGAL STANDARDS

### a.  Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.

A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id*.; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The moving party, however, need not support his motion with affidavits or other evidence negating the elements of the nonmovant's claim. *Celotex, 477 U.S.* at 323. Once the moving party has satisfied this initial burden, the burden then shifts to the nonmoving party to show that

10

summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).

To withstand a motion for summary judgment, the nonmovant must present evidence sufficient to establish the existence of a genuine issue for trial. Fed. R. Civ. P. 56 (e); Celotex, 477 U.S. at 322-23; *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In other words, the nonmovant must set forth specific facts supported by competent summary judgment evidence that would establish each of the challenged elements of its case for which it will bear the burden of proof at trial. *Topalian*, 954 F.2d at 1131. The nonmovant cannot rest upon mere conclusory allegations or denials of the adverse party's pleadings but must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" should not be considered by the Court. *Id.*

While the Court must construe all evidence and justifiable inferences drawn from the record in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986), it need not consider conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation when ruling on a summary judgment motion. See *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth*, 19 F.3d at 1533. Moreover, the Court should not assume in the absence of sufficient proof that the nonmovant could or would prove the necessary facts. *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**b. The qualified immunity defense alters the burden of proof on summary judgment.**

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, provided their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Police officers are specifically entitled to assert this qualified immunity defense. *Gassner v. City of Garland*, 864 F.2d 394 (5th Cir. 1989). Sgt. Rudloff has affirmatively pled the defense of qualified immunity with respect to Plaintiff's § 1983 claims for excessive force, due process violations, and false arrest. ECF No. 14 ¶¶ 2.2-2.4.2.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. Plaintiff bears the burden of proof both on summary judgment and at trial. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

While summary judgment standards are well known, it "bears repeating that while we view all facts in a light most favorable to [plaintiff]," the burden remains on the plaintiff "to negate the qualified immunity defense once properly raised." *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) (citation and quotation marks omitted.) Thus, "[e]ven on summary judgment, we cannot ignore that qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks omitted).

In determining qualified immunity, courts engage in a two-part analysis that can be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Griggs v. Brewer*, 841

F.3d 308, 312 (5th Cir. 2016). One part of the analysis entails "assess[ing] whether a statutory or constitutional right [was] violated on the facts alleged." *Griggs*, 841 F.3d at 312. That is, the plaintiff must show "that the official violated [his or her] statutory or constitutional right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Second, the plaintiff must show that "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Harlow*, 457 U.S. at 818). A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right at issue, not merely that the conduct was otherwise improper. See *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense, but in a more particularized sense so that it is apparent to the official that his actions (what he is doing) are unlawful in light of pre-existing law. *Creighton*, 483 U.S. at 640; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (holding that to overcome qualified immunity, pre-existing law must truly compel the conclusion that what the defendant is doing violates federal law in the circumstances). To carry this burden, a plaintiff must specifically identify "controlling authority" or "a robust 'consensus of cases of persuasive authority'" holding the specific conduct in question unlawful. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (quoting *al-Kidd*, 563 U.S. at 741-42).

The analysis does not end there. Even if the government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. See *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Taken together, the second step in the analysis requires the Court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522

F.3d 508, 511 (5th Cir. 2008). In *Creighton*, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful in light of clearly established law and the information possessed by him. 483 U.S. at 641. If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

The Supreme Court also has clarified that the two-prong protocol established in *Saucier v. Katz*, 533 U.S. 194, 202 (2001), overruled in part by *Pearson*, 555 U.S. 223, while often still appropriate, is no longer mandatory when resolving qualified immunity claims. District courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case. *Pearson*, 555 U.S. at 336.

To defeat Sgt. Rudloff's qualified immunity defense, Plaintiff must also prove that Sgt. Rudloff's conduct was objectively unreasonable under the circumstances. *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999). Plaintiff has the burden of proving each element of the qualified immunity analysis for each of his three causes of action, but he cannot prove any of them. Because Plaintiff cannot satisfy either prong of the qualified immunity analysis related to his claims, Sgt. Rudloff is entitled to qualified immunity and summary judgment on Plaintiff's § 1983 claims.

## V.    ARGUMENTS AND AUTHORITIES

**a. Sgt. Rudloff is entitled to qualified immunity on Plaintiff's Count I and Count II causes of action related to the First, Fourth, and Fourteenth Amendments because Sgt. Rudloff never violated Plaintiff's constitutional rights.**

Plaintiff's first two causes of action allege he was arrested without probable cause in violation of his Fourth Amendment rights—and was specifically arrested to suppress his First Amendment rights. These claims both fail because, *inter alia*, (1) Sgt. Rudloff's DPD superior instructed him to arrest the people who had been on the highway; (2) by Plaintiff's own admission, he had been actually or effectively on the highway; (3) Sgt. Rudloff did not personally arrest or charge Plaintiff with any criminal offense; and (4) even if Sgt. Rudloff arrested Plaintiff (which he did not), he had probable cause to arrest him.

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . ." U.S. Const. amend. IV. Simply, the Fourth Amendment does not prohibit all searches and seizures—only those that are "unreasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (explaining people enjoy the constitutional right to be free from false arrest without probable cause); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (noting the same).

The Fifth Circuit has held that probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (quoting *Spiller v. Tex. City*, 130 F.3d 162, 165 (5th Cir. 1997)). To establish probable cause, a reasonable person standard is used. *Id*.

To prevail on a section 1983 claim for false arrest, Plaintiff must prove that Sgt. Rudloff did not have probable cause to arrest him. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir.

2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). The Fifth Circuit has, notably and cogently for this case, cautioned that "[i]n making a determination of probable cause, we do not require a police officer to be perfect, nor do we want him always to err on the side of caution out of the fear of being sued." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992).

"Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules'" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S. Ct. at 586 (citations omitted.) "Probable cause, we have often told litigants, is not a high bar" and "requires only the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citation omitted.)

The Fifth Circuit has found whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence, is of no importance. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Likewise, whether an arrestee was ever charged or convicted of the crime for which the officer arrests him is irrelevant. *Cole v. Carson*, 802 F.3d 752, 766 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 196 L. Ed. 2d 397, 137 S. Ct. 497 (2016), and *opinion reinstated in part*, 905 F.3d 334 (5th Cir. 2018)

Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to

arrest or detain the person for any crime." *Id*; see also *O'Dwyer v. Nelson*, 310 F. App'x. 741, 745 (5th Cir. 2009) ("'[T]o prevail in a § 1983 claim for false arrest,' . . . [a]s applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." (citations omitted)). As the Fifth Circuit has summarized:

> The Court notes that to prevail on a § 1983 false arrest claim, the plaintiff bears the burden to show that the police officer did not have probable cause to arrest him. Probable cause is found "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." The police officer is entitled to qualified immunity if a reasonable officer in his position could have believed that in light of the totality of the facts and circumstances of which the police officer was aware, there was a fair probability that the [individual] had committed or was committing an offense. "Fair probability" for purposes of probable cause requires more than a bare suspicion, but less than a preponderance of evidence. Even if the police officer reasonably but mistakenly determined that probable cause existed, he is entitled to immunity.

*Cole I*, 802 F.3d at 764. (emphasis added.)

As seen below, probable cause existed to arrest Plaintiff for multiple crimes.

### i. There was sufficient probable cause to arrest Plaintiff for obstruction of a highway.

The Texas Penal Code defines the relevant misdemeanor of "obstruction of a highway" as the following:

> (a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
>
> > (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others; or
>
> > (2) disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a

17

fireman, or a person with authority to control the use of the premises:

> (A) to prevent obstruction of a highway or any of those areas mentioned in Subdivision (1); or

> (B) to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.

(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

Tex. Penal Code Ann. § 42.03.

### 1. Officers saw Plaintiff on the highway when the highway was completely obstructed.

Plaintiff admitted to at least being on the "shoulder" of I-35 around the time he was arrested.[2] (App. 9-10.) Plaintiff admits to being on the "shoulder" from 8:31-8:32 p.m. *Id*.

As shown above, according to at least <u>four witnesses</u> – Sgt. Rudloff, Senior Corporal Barrett, Senior Corporal Pillar, and Sgt. Transou – Plaintiff was on the highway when it was completely obstructed. (App. 1-8.) The sworn affidavit supplying probable cause for Plaintiff's arrest provided evidence of at least two crimes, but noted that he was specifically seen on the highway and refused verbal commands to disperse. (App. 13.)[3]

This alone is more than sufficient probable cause to justify Plaintiff's arrest for obstruction.

### 2. The totality of the circumstances provided more than sufficient probable cause for Plaintiff's arrest for obstruction.

Even still, given the totality of the circumstances, probable cause existed to arrest Plaintiff because Sgt. Rudloff was aware of "reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe" that a crime has been or will be

---

[2] Plaintiff's response to the Interrogatory included numerous objections, even though this Court specifically authorized the entirety of the question.

[3] As discussed below, Plaintiff's own statements to DPD's Public Integrity Unit remove any doubt that the highway was completely obstructed.

committed. *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006). The Declarations of Sgt. Rudloff, Senior Corporal Pillar, and Senior Corporal Barrett all agree on the following series of events: hundreds of rioting protestors swarmed I-35, stopping traffic and defaced property; under a hail of thrown debris and chants of "fuck the police," the officers chased the protestors off the highway onto a grassy area; Plaintiff was in and/or adjacent to the group that had just hurried away from the highway. (*See generally*, App. 1-8.)

Plaintiff's own Complaint includes pictures of him standing in the same area as the individuals the Declarants have sworn the multitude of protestors illegally on the highway swarmed to right around sunset. *See* Compl. p.11.

Further, Plaintiff made a recorded statement to the DPD Public Integrity Unit. (App. 255.) While Plaintiff does not specifically admit to participating in a riot, Plaintiff placed himself on the highway and dead center among the individuals who had just left the highway after obstructing it:

- "Prior to the interaction with the police and the protestors that day, with this incident, from what I witnessed, was protestors were making their way onto the 35-east freeway, about the time when I arrived there, traffic was blocked, traffic was stopped, protestors were ahead marching. *I was staying a little bit behind photographing what was going on, kind of like, within the cars that were stopped on the freeway*." (*Id.* 9:21:42-9:22:15) (emphasis added.)

- [Describing where he was when he witnessed a protestor fall on a grassy knoll by an exit]: "I was standing underneath the overpass . . . where the grass and everything was right by the freeway . . . right by Reunion Tower on the 35-east." (*Id.* 9:24:46-9:25-22.)

Lastly, Plaintiff's response to the Interrogatory states he was illegally on the highway's shoulder (App. 9-10.)

In sum, Plaintiff claimed he was "within the cars that were stopped on the freeway" and was among those who had just moved from obstructing the highway to the side of the road. The DPD officers on the scene did not need absolute proof Plaintiff had been rioting on the highway

to have probable cause to arrest him: "While the summary judgment evidence does not establish beyond dispute that Plaintiff actually violated Tex. Pen. Code § 42.03 prior to [his] arrest, it does establish beyond dispute that a reasonable officer in Defendant['s] position could have suspected that [he] had, and could have believed he had probable cause to arrest." *Ikhinmwin v. Rendon*, No. 5:16-CV-184-OLG, 2017 WL 10768508, at *3 (W.D. Tex. Dec. 20, 2017) (citation omitted.)

Among the sea of people, a reasonable officer could have concluded that Plaintiff—who had been among the cars on the freeway and was illegally on the very same highway's shoulder at the time the protestors fled the police—had been a participant in the obstruction that just occurred.

Therefore, probable cause existed to arrest Plaintiff for obstructing a highway.

### ii.    There was sufficient probable cause to arrest Plaintiff for riot participation.

Under the Texas Penal Code, participating in a "riot" is a misdemeanor:

(a) For the purpose of this section, "riot" means the assemblage of seven or more persons resulting in conduct which:

> (1) creates an immediate danger of damage to property or injury to persons;
>
> (2) substantially obstructs law enforcement or other governmental functions or services; or
>
> (3) by force, threat of force, or physical action deprives any person of a legal right or disturbs any person in the enjoyment of a legal right.

Tex. Penal Code Ann. § 42.02.

Based on the Declarations, hundreds of people had completely stopped down a major highway and were defacing vehicles. (App. 1-8.) These same DPD officers witnessed Plaintiff on the highway when all of this violence was occurring or had just occurred. *Id.* As seen above, Sgt. Transou provided evidence for the warrant for Plaintiff's arrest that Plaintiff "was a willing

participant in an assemblage of seven or more persons which resulted in a riot" and refused orders to disperse. (App. 13-14.) Further, Plaintiff himself admitted to being on the highway's "shoulder" and either in or directly adjacent to the crowd that had been participating in this riot. (App. 9-10; App. 255 at 9:24:46-9:25-22.)

Under the circumstances, a reasonable officer could have believed that Plaintiff had been participating in the riot.

### iii.  There was sufficient probable cause to arrest Plaintiff for violating the Texas Transportation Code.

As noted, Plaintiff's sworn response to this Court's ordered interrogatory admitted that he was on I-35's shoulder: "Plaintiff stepped onto the I-35 improved shoulder and walked tightly along the shoulder's outer barrier for approximately one minute between 8:31 p.m. and 8:32 p.m. on May 30, 2020." (App. 9-10.)

Under the Texas Transportation Code, with only some exceptions not present here, walking on such a shoulder is against the law:

(a) A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian.

(b) If a sidewalk is not provided, a pedestrian walking along and on a highway shall if possible walk on:

(1) the left side of the roadway; or

(2) the shoulder of the highway facing oncoming traffic.

Tex. Transp. Code Ann. § 552.006.

As the evidence shows, Plaintiff was not on the left side of the highway nor on the shoulder of the highway facing traffic when he was first encountered by DPD officers. Therefore, probable cause existed to arrest Plaintiff for illegally being on the incorrect side of the highway, a clear violation of the Texas Transportation Code.

As seen in the Declarants' testimony, DPD moved the violent protestors off the highway and onto the "grassy area" on the right side of the road, facing north and thus with the flow of traffic, and arrested them there. (App. ___ Affs) The depiction Senior Corporal Barrett provided illustrated this "rightward sweep" of law enforcement and location of the arrest:



A: Starting Point
B: DPD officers Route
C: Place of Arrest

Z. Barrett 8893
11-10-2022

(App. 6.)

This places Plaintiff—whether he had been on the obstructed highway or not—on the illegal side of the highway: the right side and with the flow of traffic. This is confirmed by Plaintiff's own specific admission to being on the I-35 "shoulder" for at least one minute prior to his arrest. (App. 9-10.) This is also confirmed in his own statement that he was "was standing underneath the overpass . . . where the grass and everything was right by the freeway . . . right by Reunion Tower on the 35-east." (App. 255 at 9:24:46-9:25-22.)

Violating the above section is a misdemeanor under Texas law. *See Martinez-Cornelio v.*

*State*, No. 06-19-00061-CR, 2019 WL 4891710, at *4 (Tex. App. Oct. 4, 2019) (finding where defendant was walking on the wrong side of the road, ". . . [defendant] violated Section 552.006 of the Texas Transportation Code, a Class C misdemeanor.") (citing Tex. Transp. Code Ann. § 542.301.) And Texas courts routinely find probable cause for arrest for walking on the incorrect side of the street. *See id*.; *McBride v. State*, 359 S.W.3d 683, 693 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (finding officer had probable cause to arrest defendant for walking on the wrong side of the street in violation of Section 552.006 of the Texas Transportation Code); *Briseno v. State*, No. 04-19-00042-CR, 2020 WL 1866276, at *4 (Tex. App.—San Antonio Apr. 15, 2020, no pet.) (finding probable cause for arrest where officer witnessed defendant "walking on the wrong side of the road in violation of section 552.006 of the Transportation Code."); *see also State v. Patterson*, 291 S.W.3d 121, 122–23 (Tex. App.—Amarillo 2009, no pet.) (concluding that officer had reasonable suspicion to detain a pedestrian walking with his back to traffic because it was a traffic violation under Section 552.006).

Therefore, not only did *probable cause exist to arrest* Plaintiff for violating section 552.006 of the Texas Transportation Code, by Plaintiff's own admission and the evidence, likely *incontrovertible proof exists that he committed the misdemeanor*.

Sgt. Rudloff need not prove that Plaintiff is guilty of the above offenses. Sgt. Rudloff is entitled to qualified immunity even if he did not have probable cause to arrest a suspect "if a reasonable person in [his] position 'would have believed that [his] conduct conformed to the constitutional standard in light of the information available to [him] and the clearly established law.'" *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). Based on the above, the facts present at the time of his

arrest was ample to give any arresting officer probable cause. Accordingly, Sgt. Rudloff is entitled to qualified immunity.

### iv.  Plaintiff's First Amendment retaliation claims fail.

The gravamen of Plaintiff's Complaint is that Sgt. Rudloff arrested him in order to suppress his First Amendment rights. *See generally*, Compl. However, under U.S. Supreme Court and Fifth Circuit case law, his retaliation claims fail.

The First Amendment's explicit protection of journalists' right to report events is as clear as it is imperative. *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936) ("A free press stands as one of the great interpreters between the government and the people. To allow it to be fettered is to fetter ourselves.") Intrinsic to the right to report is the right to gather: "[n]ews-gathering, for example, is entitled to first amendment protection, for without some protection for seeking out the news, freedom of the press could be eviscerated . . ." *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) (quotation marks and citations omitted.)

Nonetheless, as has been long recognized, "[t]he right to speak and publish does not carry with it *the unrestrained right to gather information*." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) (emphasis added); *see also Turner*, 848 F.3d at 688, 690 (holding that like all rights, the newsgathering "right is not absolute" and "is not without limitations.") (citing *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011)). While recording police activity is, in general, undeniably protected speech, "[l]ike all speech, filming the police 'may be subject to reasonable time, place, and manner restrictions.'" *Turner*, 848 F.3d at 690 (quoting *Glik*, 655 F.3d at 84)). Indeed, as the U.S. Supreme Court has stated:

> [d]espite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations. *Newsmen have no constitutional right of access to the scenes of*

24

*crime or disaster when the general public is excluded*, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal.

*Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972) (emphasis added.)

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998).

To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (emphasis in original.) "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*; *see also Hartman*, 547 U.S. at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.")

Relevant here, the Supreme Court recently dealt with "whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment." *Nieves*, 139 S. Ct. at 1725. The Court's ultimate conclusion: "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Id.*, at 1724. As this Court only recently summarized: "under the clearly established law prong of the

qualified immunity analysis, there is generally not a First Amendment right to be free from retaliatory arrest that is supported by probable cause." *Thomas v. Gage et al.*, No. 4:21-CV-692-P, 2022 WL 17586547, at *8 (N.D. Tex. Oct. 17, 2022) (citing *Nieves*, 139 S. Ct. at 1725); *see also Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2021 WL 3474006, at *5 (W.D. Tex. Aug. 6, 2021) ("It is clearly established that an arrest or prosecution *unsupported by probable cause* that is made in retaliation for protected speech violates the First Amendment.") (citation omitted) (emphasis in original.) As detailed above, more than sufficient probable cause existed at the time of Plaintiff's arrest.

As the Supreme Court has recognized, a "purely subjective approach would undermine that precedent by allowing even doubtful retaliatory arrest suits to proceed based solely on allegations about an arresting officer's mental state." *Nieves*, 139 S. Ct. at 1725 (citation omitted.) Because a state of mind is "easy to allege and hard to disprove," *Crawford-El*, 523 U.S. at 585, a subjective inquiry would threaten to set off "broad-ranging discovery" in which "there often is no clear end to the relevant evidence." *Harlow*, 457 U.S. at 817. With amazing foresight, the Court noted that "[a]s a result, policing certain events like an *unruly protest* would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation." *Nieves*, 139 S. Ct. at 1725 (emphasis added.) A more subjective "standard would thus 'dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.'" *Id. (quoting Gregoire v. Biddle*, 177 F. 2d 579, 581 (C.A.2 1949) (Learned Hand, C.J.). It would also compromise evenhanded application of the law by making the constitutionality of an arrest "vary from place to place and from time to time" depending on the personal motives of individual officers. *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004). The Court noted that "another 'predictable consequence' of such a rule is that officers

would simply minimize their communication during arrests to avoid having their words scrutinized for hints of improper motive—a result that would leave everyone worse off.'" *Nieves*, 139 S. Ct. at 1725 (citation omitted.)

Thus, generally, a plaintiff must plead and prove the absence of probable cause for an arrest. However, the Supreme Court carved out a narrow exception to the general rule that the existence of probable cause will defeat a retaliatory arrest claim. Under this exception, a plaintiff need not show the lack of probable cause "where officers have probable cause to make arrests, but *typically* exercise their discretion not to do so." *Id.* at 1727 (emphasis added.) This is because "[i]n such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (citation omitted.) The Court provided the example of jaywalking, which it noted "is endemic but rarely results in arrest." *Id.* It continued, "[i]f an individual who has been vocally complaining about police conduct is arrested for jaywalking," the claim should not be dismissed despite the existence of probable cause because "[i]n such a case, . . . probable cause does little to prove or disprove the causal connection between animus and injury." *Id.* The Court "conclude[d] that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

This exception, the Fifth Circuit has found, is indeed narrow:

> The Court's language was careful and explicit: it required "objective evidence" of "otherwise similarly situated individuals" who engaged in the same criminal conduct but were not arrested. The most reasonable reading of this language is that some comparative evidence is required to invoke this "narrow" exception.

*Gonzalez v. Trevino*, 42 F.4th 487, 493 (5th Cir. 2022)

The declarations of the officers on scene illustrate that Plaintiff was not specifically

targeted in some way that the *Nieves* exception could potentially apply. Numerous individuals were arrested along with Plaintiff:

- "Once we were on the east side of I-35 on the grass, we began to take in custody that were part of the same group that we observed had just been on the highway." (App. 1);

- "DPD officers then began arresting those in the group that had come over the guardrails from the freeway." (App. 4); and

- "Once we were on the east side of I-35 on the grass, we began to take in custody those that were part of the same group that we believed had just been on the highway." (App. 7.)

Further, the documentation that recorded Plaintiff's arrest notes three other individuals were also arrested at the exact same time for the exact same activity:

> NARRATIVE:
>
> ON SATURDAY, MAY 30, 2020, ARRESTING OFFICER T.HOFFMAN 11613, WAS ASSIGNED TO A LARGE PROTEST AT, 1700 Commerce st, DALLAS, DALLAS COUNTY, TEXAS.
>
> ARRESTING OFFICER Sgt Transou #6940 OBSERVED AP PARKER NEVILLS, YOLANDA DOBBINS, MAGGIE LITTLE, CHRISTOPHER RUSANOWSKY STANDING IN THE ROADWAY, AFTER ARRESTING OFFICERS ORDERED AP PARKER NEVILLS, YOLANDA DOBBINS, MAGGIE LITTLE, CHRISTOPHER RUSANOWSKY TO UTILIZE THE SIDEWALKS.
>
> AP PARKER NEVILLS, YOLANDA DOBBINS, MAGGIE LITTLE, CHRISTOPHER RUSANOWSKY WAS A WILLING PARTICIPATE IN AN ASSEMBLAGE OF SEVEN OR MORE PERSONS WHICH RESULTED IN A RIOT, AND REFUSED TO FOLLOW LAWFUL ORDERS OF VERBAL COMMANDS GIVEN BY ARRESTING OFFICER Sgt Transou GIVEN OVER LOUD SPEAKER TO DISPERSE.
>
> THE AP PARKER NEVILLS, YOLANDA DOBBINS, MAGGIE LITTLE, CHRISTOPHER RUSANOWSKY WERE TAKEN INTO CUSTODY AND SUBSEQUENTLY TRANSPORTED TO DALLAS COUNTY JAIL.

(App. 252.)

Plaintiff's Complaint describes these individuals as "unarmed protestors," and there is no basis to assume they were journalists. Compl. ¶¶ 2; 23. The Complaint even provides what it purports to be photographs of Sgt. Rudloff arresting these individuals. *Id*. pp. 6-7; 11-12.

Further, the three DPD officers' declarations all provide sworn testimony that they did not arrest anyone for any viewpoint or because an individual was covering the events. (App. 1-8.)

They also provide sworn testimony that they have never even heard of a single person being targeted for viewpoint discrimination. *Id.*

> Importantly, this Court refused Plaintiff's requests for discovery related to this claim:
>
> Rusanowsky appears to also raise a second question of fact that implicates the exception to the requirement that, "[t]o prevail on a First Amendment retaliation claim, [ ] plaintiffs must plead and prove the absence of probable cause." In the Rule 7(a)(7) reply, he alleges that he "is not aware of any other journalist from the grassy shoulder who was also arrested, despite those other journalists working in proximity to [him] while he was on the grassy shoulder and photographing the protest." Dkt. No. 26, ¶ 25. But Rusanowsky's alleged scenario – the nonarrest of others who, like him, were exercising rights protected by the First Amendment – does not seem to fit (at least for the limited purpose of this order) into the "'narrow' exception to this rule where the 'plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'"

ECF No. 37, pp. 15-16 (quoting *Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020).)

In sum, this is not a case resembling the narrow *Nieves* hypothetical of a "jaywalking journalist" who is arrested for an endemic-but-unenforced law after criticizing the government. *Nieves*, 139 S. Ct. at 1727. Instead, Plaintiff was arrested—literally in real time, although not by Sgt. Rudloff—with other individuals for the exact same offense under the same set of facts.[4] In the Fourth Amendment context, the Supreme Court has "almost uniformly rejected invitations to probe subjective intent." *al-Kidd*, 563 U.S. at 737; see also *Kentucky v. King*, 563 U.S. 452, 464 (2011) ("Legal tests based on reasonableness are generally objective, and this Court has long taken the

---

[4] The Complaint attempts to hyper-granularize the *Nieves* exception by alleging that because some journalists were allegedly present at the scene but were not arrested, then somehow Plaintiff has presented a scenario "where officers have probable cause to make arrests, but *typically* exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727 (emphasis added.) It is unknown whether other journalists violated the law. But such a reading of *Nieves* would cause the exception to swallow the rule and require litigants to specifically parse out the identities and characteristics of those police *do not arrest at a scene*. If, for a not-exactly-unlikely example, opposing protestors violently clashed and officers began making arrests, Plaintiff's reading would lead to judicial bean counting over whether more of this type of protestor was arrested than that type. "Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in 'circumstances that are tense, uncertain, and rapidly evolving.'" *Id* at 1724-25 (citation omitted.) No case law can support Plaintiff's attempt to require such specific examination.

view that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." (internal quotation marks omitted)). There is no need for further inquiry into whether Sgt. Rudloff (or any DPD officer) refused to enforce the obstruction and/or rioting statutes because DPD officers enforced those very same statutes on others on the day in question.

Therefore, because probable cause existed to arrest Plaintiff and there can be no dispute that the laws under which Plaintiff was arrested were applied to others, Plaintiff's First Amendment retaliation claims fail.

**b. Sgt. Rudloff is entitled to qualified immunity on Plaintiff's count III cause of action related to the Fourth and Fourteenth Amendments because Sgt. Rudloff never violated Plaintiff's constitutional rights.**

Plaintiff's final cause of action claims Sgt. Rudloff "initiated a malicious prosecution against" him in violation of his Fourth Amendment rights. Compl. ¶¶ 105-10. This claim fails.

In general, the Fifth Circuit "has held that although there is no 'freestanding constitutional right to be free from malicious prosecution,' '[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example.'" *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc)). "In *Winfrey*, we held that the plaintiff had presented a cognizable Fourth Amendment claim because he was arrested pursuant to a warrant whose affidavit did not establish probable cause, and the criminal proceedings ended in his favor." *Payton v. Town of Maringouin*, No. 21-30440, 2022 WL 3097846, at *3 (5th Cir. Aug. 3, 2022) (citation omitted.)[5]

---

[5] Plaintiff's Complaint also cites state law malicious prosecution elements. Compl. ¶ 109 (citing *Luce v. Interstate Adjusters, Inc.*, 26 S.W.3d 561 (Tex. App.—Dallas 2000).) Such claims "are not cognizable under § 1983 without allegations of an underlying constitutional violation." *Gonzales v. Hunt Cnty. Sheriff's Dep't*, No. 3:20-CV-3279-K,

First, "'[i]t has long been 'settled law' that malicious prosecution requires proving the want of probable cause.'" *Nieves*, 139 S. Ct. at 1726 (citing *Brown v. Selfridge*, 224 U.S. 189, 191 (1912). As detailed above, the existence of probable cause for Plaintiff's arrest for multiple crimes extinguishes any claims of malicious prosecution. Therefore, his malicious prosecution claims fail at the outset.

Second, Plaintiff's malicious prosecution claim fails for another critical reason: the wrong defendant. As shown in all the documentation and testimony related to Plaintiff's arrest, Sgt. Rudloff did not make the decision to arrest Plaintiff, did not actually arrest Plaintiff, and did not charge him with a crime.

As Sgt. Rudloff explained, once the individuals were found who had run from the highway, the decision to arrest was not his, but his supervisor's:

> At this point, we did not have clear direction from DPD command staff about what to do with the people who had been on the highway. I did not know if we were supposed to start arresting any of these people because that would tie up police resources while other scenes might need attention. I got on the radio and said something to the effect of "Someone is going to need to clarify what we do with the people on the freeway." *Chief Thomas Castro came on police radio and commanded us to start arresting these individuals by saying something to the effect of "We need to round those folks up."*

(App. 1) (emphasis added.)

Further, after instructed to make arrests, he never even made contact with Plaintiff until another officer had already arrested him:

> [m]y first direct interaction with Mr. Rusanowsky was *after Cpl. Pillar had arrested him*. Cpl. Pillar informed me that Mr. Rusanowsky was with the media. This was the first time I had any inkling that Mr. Rusanowsky was supposedly a

---

2021 WL 2337143, at *8 (N.D. Tex. June 8, 2021) (rejecting plaintiff's efforts to sue defendant under state malicious prosecution theory.) This Court recently rejected a similar effort to assert a state law claim for malicious prosecution. *Melton v. Waxahachie Police Dep't*, No. 3:21-CV-2854-K-BH, 2022 WL 3636616, at *14 (N.D. Tex. Aug. 8, 2022), *report and recommendation adopted*, No. 3:21-CV-2854-K, 2022 WL 3639506 (N.D. Tex. Aug. 23, 2022) (finding "malicious prosecution," an intentional tort under Texas law, is not permitted under the Texas Torts Claims Act.)

member of the press. At some after Cpl. Pillar told me Mr. Rusanowsky was a member of the press, Mr. Rusanowsky told me he was a press member who sold pictures on the Internet. I explained to him that he still had no right to be illegally on the freeway. *I never filled out any arrest reports on Mr. Rusanowsky. I have no idea who charged him with a crime or for what specific crime, if any.* My interaction with Mr. Rusanowsky was not precipitated or continued due to the fact he was a member of the press. I never sought his arrest because he was a member of the press.

(App. 2) (emphasis added.)

In the Arrest Sheet, Plaintiff's ultimate arresting officer is Officer Thomas Hoffman. (App. 17.) As seen in the Affidavit for Plaintiff's Arrest Warrant, Officer Hoffman and Sgt. Transou gave the testimony that provided probable cause for arresting Plaintiff. (App. 13-14.) Based on this specific testimony, a Dallas County judge signed Plaintiff's warrant. *Id.* Similarly, the DPD Incident Data Sheet Report lists Officer Hoffman as the reporting officer and Officer Teriann Mitchell as the supervising officer. (App.243.) Consequently, the charges Plaintiff faced—whether obstruction of a highway or riot participation—were the result of other individuals' sworn statements and actions. Sgt. Rudloff's name is not even mentioned in any of these charging documents, much less indicates he had even a small hand in whatever charges Plaintiff ultimately received. The fact that Sgt. Rudloff was one of many DPD officers on the scene is immaterial.

Therefore, because substantial probable cause existed to arrest and charge Plaintiff, and because Sgt. Rudloff was neither Plaintiff's arresting officer nor the officer responsible for his arrest warrant affidavit, Plaintiff's malicious prosecution claims necessarily fail.

**c.  None of Sgt. Rudloff's actions violated clearly established law at the time.**

Even if the Court were to find that Plaintiff has shown that the Sgt. Rudloff violated his constitutional right(s), which he cannot, Plaintiff cannot show such a constitutional right was clearly established at the time of the incident. The "clearly established" prong of the qualified immunity analysis requires a demonstration that the right allegedly violated is one that "'is

sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This does not mean that Plaintiff must present "'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S.). Plaintiff may show that the existence of the right that was allegedly violated was "beyond debate" by "point[ing] to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Chapman*, 969 F.3d 238 at 371-72 (5th Cir. 2020) (quoting *al-Kidd*, 563 U.S.). As this Court has found, Fifth Circuit "precedents [have] built qualified immunity into a nearly insurmountable obstacle." *Crane v. City of Arlington, Tex.*, 542 F. Supp. 3d 510, 513–14 (N.D. Tex. 2021).

Sgt. Rudloff and other DPD officers confronted a once-in-a-generation protest that spanned the city of Dallas and, as is well known, sometimes turned violent. Sgt. Rudloff, along with several other officers, saw Plaintiff on the freeway as protestors were smashing cars and screaming obscene, abusive language at the police. As all the Declarants explain, individuals from the crowd were even dangerously hurling objects at them. Sgt. Rudloff is aware of no case law that arresting someone immediately seen by officers within such a crowd is contrary to any Fourth Amendment restraints on police use of the power to arrest to restore order in a hazardous, unruly situation where the police are vastly outnumbered. Citywide emergencies are no excuse to discard individuals' rights to protest and gather news, but the First and Fourth Amendments—as well as 42 U.S.C. § 1983—were never intended to hamstring law enforcement, either.

As shown above, U.S. Supreme Court and Fifth Circuit case law holds that Sgt. Rudloff's actions did not violate Plaintiff's First, Fourth, or Fourteenth Amendment rights. No case law in

this circuit put Sgt. Rudloff on notice that his actions during the undisputed circumstances were "clearly established" as unconstitutional.

## VI.    CONCLUSION

Sgt. Rudloff has established that Plaintiff has failed to adduce sufficient evidence to create genuine issues of fact for any of his claims. Because Sgt. Rudloff did not violate Plaintiff's constitutional rights, he is entitled to dismissal of Plaintiff's § 1983 claims and should be granted summary judgment as a matter of law on all claims against him.

Respectfully submitted,

CITY ATTORNEY OF THE CITY O F DALLAS

TAMMY L. PALOMINO
Interim City Attorney

*s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
 john.ligon@dallas.gov

Dallas City Attorney's Office
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:    214-670-3519
Facsimile:    214-670-0622

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send notification to case participants registered for electronic notice.  I further certify that to the extent applicable I have served all case participants not registered for electronic notice by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*s/ J. Cheves Ligon*
Senior Assistant City Attorney