# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER RUSANOWSKY, | ) | |
| | ) | |
| ***Plaintiff***, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:22-cv-1132 |
| CITY OF DALLAS and SGT. | ) | |
| ROGER A. RUDLOFF, individually | ) | |
| and in his official capacity as a Dallas | ) | |
| Police Department Police Officer, | ) | |
| | ) | |
| ***Defendants***. | ) | |
| | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF HIS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated: June 30, 2023

Respectfully Submitted,

David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
J. Sebastian Van Coevorden
Texas State Bar No. 24128101
svancoevorden@equalrights.law
**ELLWANGER LAW LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, TX 75208
Telephone: (469) 998-6775
Facsimile: (469) 998-6775

*/s/ Thomas S. Leatherbury*
Thomas S. Leatherbury
Texas State Bar No. 12095275
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 N. Akard Street
Dallas, Texas 75201
tom@tsleatherburylaw.com
Telephone: (214) 213-5004

*/s/ Peter B. Steffensen*
Peter B. Steffensen
Texas State Bar No. 24106464
psteffensen@smu.edu
SMU Dedman School of Law
First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275
Telephone: (214) 768-4077
Facsimile: (214) 768-1611

***Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Peter B. Steffensen*
Peter B. Steffensen

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| CHRISTOPHER RUSANOWSKY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:22-cv-1132 |
| ) | |
| CITY OF DALLAS and SGT. ) | |
| ROGER A. RUDLOFF, individually ) | |
| and in his official capacity as a Dallas ) | |
| Police Department Police Officer, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

<u>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

I.      **Brief Factual Review** ..........................................................................................1

II.     **Defendant's Post Hoc Justifications for Plaintiff's Arrest Do Not Make Up for His
        Lack of Particularized Knowledge on May 30, 2020**...................................................3

        a.      Defendant Lacked Probable Cause to Arrest Plaintiff for Failing to Use a Sidewalk and
                Obstructing a Roadway. ....................................................................................4

        b.      Defendant Lacked Probable Cause to Arrest Plaintiff for Riot Participation. ................9

III.    **The Summary Judgment Record Permits an Inference that Defendant was
        Substantially Motivated Against the Exercise of Plaintiff's First Amendment Right
        to Record the Police in the Public Exercise of their Official Duties.**...........................13

IV.     **Plaintiff's Malicious Prosecution Claim Should Proceed if the Court Finds
        Defendant Lacked Probable Cause to Arrest Plaintiff.**.................................................16

V.      **Conclusion** ........................................................................................................17

## TABLE OF AUTHORITIES

### Cases

*Adelman v. Dallas Area Rapid Transit*, 2018 WL 3520426, (N.D. Tex. July 20, 2018), *aff'd sub nom. Adelman v. Branch*, 784 F. App'x 261 (5th Cir. 2019) ................................................9, 15

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988).......................................................................9

*Bourgeouis v. Peters*, 387 F.3d 1303 (11th Cir. 2004)........................................................6

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009) ........................................................3, 6

*Crawford v. City of Houston, Tex.*, 260 F. App'x 650 (5th Cir. 2007)..............................................2

*Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017).....................................6, 7, 11, 12

*Evett v. DETNTFF*, 330 F.3d 681 (5th Cir. 2003).....................................................................8, 15

*Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320 (5th Cir. 1996) ........................................................14

*Hirschi v. State*, 683 S.W.2d 415 (Tex. Crim. App. 1984) (en banc)...........................................13

*Imani v. City of Baton Rouge, La.*, 614 F. Supp. 3d 306 (M.D. La. 2022) ...............................6, 11

*Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686 (5th Cir. Apr. 20, 2023) .......12

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) .....................................................................13, 15

*Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754 (N.D. Tex. 2013) .....................................................9

*Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50 (E.D.N.Y. 2012) ......................................................9

*Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) ...................................................................5

*Turner v. Lt. Driver*, 848 F.3d 678 (5th Cir. 2017) ......................................................................13

*U.S. v. Garcia*, 179 F.3d 265 (5th Cir. 1999) ..............................................................................12

*U.S. v. Martinez-Fuerte*, 428 U.S. 543 (1976)...............................................................................3

*U.S. v. Valle-Pasillas*, No. EP-19-CR-2710-PRM, 2019 WL 5196038 (W.D. Tex. Oct. 11, 2019) 7

*Winston v. City of Shreveport*, 390 F. App'x 379 (5th Cir. 2010) .................................................11

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ...........................................................................................6

**<u>Statutes</u>**

Tex. Penal Code § 42.02 ...................................................................................................5, 9

Tex. Penal Code § 42.04(a) ...................................................................................................8

Tex. Penal Code § 42.04(c)(3) ...............................................................................................8

Tex. Transp. Code § 552.006(b) ............................................................................................4

## I.     Brief Factual Review

In Sgt. Rudloff's haste to depict a chaotic scene of rioting, violence, and lawlessness on and near I-35E the evening of May 30, 2020, he attempts to create fact issues by emphasizing the false and misleading statements of other officers and by repeating his own conclusory statements about his memory of Plaintiff that night. Plaintiff documented the falsehoods and inconsistencies replete in Defendant's evidence in his Response to Defendant's Motion for Summary Judgment. Dkt. 56 at 15-27. But because of their prominence in Defendant's Response to Plaintiff's Motion, Plaintiff summarizes these falsehoods and inconsistencies.

*First*, Defendant again falsely characterizes the sworn affidavits of DPD Sgt. Scott Transou and Officer Thomas Philip Hoffman as corroborative of his recollection of the events on May 30, 2020. Dkt. 58 at 15, 16, 26, 42. But Sgt. Transou's affidavit placed Plaintiff at the scene of an alleged riot nearly a mile away from where Plaintiff was actually arrested, and where Sgt. Transou says he witnessed Plaintiff nearly 90 minutes *after* Plaintiff had been taken into custody. Dkt. 56 at 22-25. Officer Hoffman incorporated and swore to this narrative in his own arrest affidavit, which was presented to a magistrate judge to establish probable cause to further charge and detain Plaintiff. He swore to this testimony, having never personally witnessed the events Sgt. Transou allegedly observed, because Hoffman merely responded to the scene (a mile away from Sgt. Transou's position) to transport Plaintiff and others and to fill out their arrest reports. *Id.*

*Second*, far from corroborating each other, the testimony of Sgt. Rudloff, Cpl. Barrett, and Cpl. Pillar present three competing narratives about what actually happened when Rudloff and his team arrived at I-35 on or around 8:30 P.M. that evening. They don't agree on basic details about the sequence of events, the movements of protesters, or where Plaintiff was when they allegedly encountered him. Dkt. 56 at 15-20. And for all the (conflicting) details they *can* offer about that

night, their declarations are all conspicuously void of *particularized* facts about Plaintiff himself—his activities, movements, whereabouts, and how these details taken together amounted to probable cause to arrest him. *Id.* at 20-22. Their declarations are therefore conclusory on that dispositive fact. *See Crawford v. City of Houston, Tex.*, 260 F. App'x 650, 654 (5th Cir. Dec. 20, 2007) (declarations were "conclusory and conjectural" when declarants purportedly observed a conversation but couldn't "describe[] the contents of the conversation" or "even allege[] that [declarants] could hear what was being said").

Indeed, the sum total of Rudloff's recollection of Plaintiff prior to his arrest is that he "witnessed a photographer on I-35 whom [he] later learned was" the Plaintiff. Dkt. 51-1 at 1. The recollections of Cpl. Barrett and Cpl. Pillar go no further. *See id.* at 7 ("[A]t one point, he was in front of me on I-35."); *but see id.* at 4 (Cpl. Barrett "saw [him] coming from the freeway over the guardrails[,]" unlike Pillar who recalled seeing Plaintiff positioned in front of him). Rudloff stops well short of explaining why the singular fact that he saw Plaintiff on the highway supported his decision to arrest Plaintiff. Rudloff instead wipes his hands clean of Plaintiff's arrest entirely, pointing the finger at Cpl. Pillar for initiating Plaintiff's arrest despite record evidence showing that Rudloff initiated Plaintiff's arrest. Dkt. 56 at 26-27, 28-29. Cpl. Pillar also declines to explain the basis for Plaintiff's arrest—only that he "arrested him." Dkt. 51-1 at 7.

*Finally*, Plaintiff introduced evidence—contrary to Rudloff's assertion that no record evidence exists, Dkt. 58 at 15—undermining his narrative that he and his team responded to scenes of mass violence and rioting on I-35. *See* Dkt. 56 at 36-38. Rudloff's recollection of the scene is not supported by video, photographic, and testimonial evidence offered by Plaintiff. Moreover, it would have been apparent to Rudloff and his team when they arrived on the scene—as it would have been apparent to any reasonable officer—that the mass of protesters there included a mix of

2

people on the roadway amid vehicle traffic, people standing on the shoulder away from vehicle traffic, and still others standing outside the highway's lanes and supporting the protest activity from the sidelines. This made it more imperative, not less, that Rudloff and his team act with particularized knowledge when arresting people the moment they arrived to the grassy area on the highway's east side. Despite multiple opportunities to say what that particularized knowledge was when he arrested Plaintiff, Rudloff continually fails to make that showing. All he can offer is that he "witnessed" Plaintiff on the highway. Not only is that statement too conclusory to be credited, it also fails as a matter of Fourth Amendment law to justify Plaintiff's arrest.

## II.     Defendant's Post Hoc Justifications for Plaintiff's Arrest Do Not Make Up for His Lack of Particularized Knowledge on May 30, 2020.

The testimony of Rudloff, Barrett, and Pillar—and the sum and substance of Defendant's Response—reveal an "arrest first, answer questions later" approach to policing the protests on May 30, 2020 that deserves no quarter under the Fourth Amendment. As the Fifth Circuit has made quite clear, the facts supporting probable cause "must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also U.S. v. Martinez-Fuerte*, 428 U.S. 543, 565 (1976) (the Fourth Amendment commands that we "prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure"). As Plaintiff has explained, Rudloff's whisper of a recollection that he saw Plaintiff on the highway deserves little credit amid the many factual discrepancies in his own testimony, and the testimony of Barrett and Pillar. But even if the Court were to credit those statements, Rudloff still lacked probable cause to arrest Plaintiff for any offense.

a. <u>Defendant Lacked Probable Cause to Arrest Plaintiff for Failing to Use a Sidewalk and Obstructing a Roadway.</u>

For one, Defendant's Response fails to explain why seeing Plaintiff on the highway, without more, was enough to make Rudloff or any other officer suspect Plaintiff committed any offense. Perhaps implicitly recognizing this, Rudloff this time leads off by pointing to Section 552.006 of the Texas Transportation Code, a Class C Misdemeanor offense, which he exclaims Plaintiff admitted to committing twice (Plaintiff did no such thing). Dkt. 58 at 20-23. Rudloff seems to suggest that this argument—which has now been elevated from its original fallback position in his Motion, *see* Dkt. 50 at 28-31—excuses Rudloff's, Barrett's, and Pillar's collective failure to say anything more about Plaintiff beyond the barest recollection that they saw him on the highway. Indeed, the way Rudloff frames it, Transportation Code Section 552.006 is a strict liability offense for which anyone can be arrested for their mere presence on a shoulder where no sidewalk is nearby. Thus, as Rudloff argues, even if all he and his officers saw of Plaintiff was his presence on the shoulder, surely that was enough to arrest him.

But this is the second time Rudloff has declined to meaningfully grapple with the language in the statute, which explicitly limits criminal liability only to situations where it was "possible" for Plaintiff to position himself on the proper side, or face and walk the proper direction. Tex. Transp. Code § 552.006(b); *see* Dkt. 50 at 28-31; Dkt. 58 at 20-23. In fact, from the moment Plaintiff stepped onto the improved shoulder for his safety after a crowd of protesters surrounded him while standing at the highway's outer barrier, Plaintiff's only and best option was to walk the direction that he did. That is because his closest egress point off the shoulder once he had cleared the crowd of protesters around him was to move in the direction of traffic toward the grassy area he eventually ended up on. Under Sgt. Rudloff's proposed reading, not even a motorist whose car had broken down at that precise spot could walk with the flow of traffic to the closest haven off

the roadway because that too would violate the statute. That is precisely why the Transportation Code attaches criminal liability only when it is "possible" to walk in one of those designated areas. A reasonable officer viewing the scene would have recognized that it would not have been possible to walk on any other side of the road, or travel any other direction, and Defendant does not even attempt to argue otherwise.

Frontloading this argument also accentuates the deeper problems with Rudloff's assertions that he had probable cause to arrest Plaintiff for Obstruction of a Roadway and Riot Participation. Dkt. 58 at 23-28; *see* Tex. Penal Code §§ 42.02, 42.03. The biggest problem, and the one he still has no clear answer for, is that he cannot offer particularized facts about Plaintiff's conduct on the highway showing a "probability or substantial chance" that Plaintiff had committed either of these offenses. *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021).[1] The noticeable void in Defendant's evidence leads to an even more important question that looms over this summary judgment briefing: if Rudloff, Barrett, and Pillar all can swear that they indeed saw Plaintiff specifically "among the sea of individuals illegally causing havoc on I-35 and completely obstructing the roadway," Dkt. 58 at 26, why are none of them able to swear to *any other detail* describing how Plaintiff specifically engaged in that conduct?

The answer: because they can't. All three of these officers, through this briefing, had the opportunity to swear to particularized facts about Plaintiff's conduct that would have concretized their claim of probable cause. But faced with that opportunity, they could not swear to any detail

---

[1] *See* Dkt. 51-1 at 1 (Rudloff Declaration) (stating only "I witnessed a photographer on I-35 whom I later learned was Mr. Rusanowsky"); *id.* at 4 (Barrett Declaration) (stating only "Another group of individuals then came up from the freeway from over the guardrails of I-35 towards us. This group included the photographer I later learned was Mr. Rusanowsky, whom I also saw coming from the freeway over the guardrails."); *id.* at 7 (Pillar Declaration) (stating only "I recall seeing a man with two cameras within the group; at one point, he was in front of me on I-35.").

other than, to paraphrase, "we saw him on the highway." That should be fatal to Rudloff's argument. After all, even in mass arrest and mass protest environments, the Fourth Amendment still requires officers to proffer facts "particularized to the arrestee." *Club Retro*, 568 F.3d at 204; *Bourgeouis v. Peters*, 387 F.3d 1303, 1311 (11th Cir. 2004) ("The text of the Fourth Amendment contains no exception for large gatherings of people."); *see* Dkt. 56 at 34-35.

Defendant tries to tip the balance back in his favor by highlighting the conduct of others who did obstruct the highway and stating, "any law enforcement happening upon the scene could have concluded that Plaintiff had been among those who were committing these acts." That type of guilt-by-proximity argument is constitutionally infirm, because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause . . . ." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). In other words, Sgt. Rudloff cannot visit the sins of other protesters on Plaintiff; he still needed (and needs) some level of particularized knowledge about Plaintiff's conduct in order to arrest him. *See Imani v. City of Baton Rouge, La.*, 614 F. Supp. 3d 306, 358 (M.D. La. 2022) (reasonable jury could find no probable cause from facts showing no refusal to comply with orders or acts of violence on part of plaintiffs; no knowledge among officers of which plaintiff committed any crime; little communications between arresting officers and officers who processed arrestees; and no actual description of any particular plaintiff's illegal activity).

For that reason, Rudloff's discussion of *Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017), doesn't help his cause. *See* Dkt. 58 at 28-30. He claims that *Davidson*'s requirement that a roadway be rendered "impassable or unreasonably convenient" was met here because "traffic was blocked and individuals were defacing vehicles." *Id.* at 29. The use of the passive voice speaks volumes, because he still cannot say *Plaintiff* blocked traffic and that *Plaintiff*

defaced vehicles (or engaged in remotely similar conduct, for that matter). The fact that the officers in *Davidson* had no actual or constructive knowledge that the arrestee made the clinic pathway impassable underpinned the Court's conclusion that no probable cause existed. 848 F.3d at 392-93. And it is why, if the Court finds Defendant lacked probable cause, Defendant also violated clearly established law in this circuit. *See id.* at 391 ("A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment."). Here, Rudloff's knowledge that others rendered the roadway impassable is not a surrogate for particularized knowledge that Plaintiff did the same.[2]

Defendant also has no answer for Plaintiff's argument, Dkt. 46 at 31-32, that even if Plaintiff momentarily made the improved shoulder "impassable or unreasonably inconvenient," Rudloff still lacked probable cause to arrest him because of Penal Code Section 42.04's safe harbor for people engaged in constitutionally-protected activity. *See Davidson*, 848 F.3d at 392, n.4 (noting the applicability of the provision, but not reaching it because Davidson's conduct did not "otherwise violate" Penal Code § 42.03). That provision applied to Plaintiff at the time, because he was (indisputably) engaged in First Amendment-protected newsgathering activity and had not

---

[2] Defendant also cites *U.S. v. Valle-Pasillas*, No. EP-19-CR-2710-PRM, 2019 WL 5196038 (W.D. Tex. Oct. 11, 2019), for his claim that "[w]hen DPD Officers saw [Plaintiff], they reasonably could assume he had been taking part in the melee." Dkt. 58 at 30. In support, Defendant provides a parenthetical quotation devoid of its proper context. A short excerpt of the Court's findings of fact there shows why *Valle-Pasillas* is wholly irrelevant to this case and the proposition for which it is cited:

> "[Valle-Pasillas'] Black SUV pulled over onto the unimproved shoulder of Interstate Highway 10 at mile marker 76. … Immediately after the SUV stopped, a group of eight individuals immediately exited the Black SUV and fled the scene on foot. The Black SUV then fled the scene at a high rate of speed, reportedly at over 100 miles per hour. The driver of the Black SUV nearly hit a truck-tractor semi-trailer, cut off other vehicles, and drove on the shoulder of the road. Next, the driver attempted to exit the highway but lost control of the vehicle and rolled multiple times. Trooper Arellano approached the Black SUV after the crash and observed the driver exit from the rear of the vehicle. [Valle-Pasillas] fled on foot, and Trooper Arellano pursued him and made an arrest. … On September 11, 2019, Defendant was charged in a superseding indictment with transporting aliens[.]" *Id.* at *2.

7

"intentionally harmed the interests" of anyone attempting to use the improved shoulder. He was therefore required to be "ordered to move, disperse, or otherwise remedy the violation prior to his arrest[.]" Tex. Penal Code § 42.04(a). Assuming such an order was given—the parties dispute that, too, Dkt. 46 at 31-32, Dkt. 56 at 48, n.62—Plaintiff was arrested on the grassy area adjacent to the highway after spending approximately one minute on the improved shoulder. Dkt. 46 at 13-17. A reasonable officer under the circumstances would have understood, then, that there was no probable cause to arrest Plaintiff because an order to remedy the violation, "if given, was promptly obeyed." Tex. Penal Code § 42.04(c)(3).

Against Defendant's dogged insistence that Plaintiff's arrest was justified on the thinnest of factual foundations—and his claim that "Plaintiff attempts to hold Sgt. Rudloff and the other arresting officers to a standard of perfection in probable cause for arrests," Dkt. 58 at 29—Rudloff has failed to address another of Plaintiff's points: that by the time Rudloff arrested Plaintiff, the exigencies of the moment had dissipated, and a reasonable officer would have paused to develop the facts known to him before making an arrest determination. *See* Dkt. 46 at 23-24. Indeed, the sheer number of questions that needed answering to properly account for the fraught constitutional implications of Plaintiff's arrest—Defendant's lack of particularized knowledge, Plaintiff's status as a member of the press, Plaintiff's positioning off the highway in prompt compliance with any orders to disperse, and the large number of protesters in the area, many of whom never set foot on the shoulder or the highway—would have made at least a brief investigation imperative to a reasonable officer. Rudloff could have paused and asked any number of questions of Plaintiff, his fellow officers, or any other person nearby to shore up his knowledge of the situation; and he could have ensured that he was not "disregard[ing] facts tending to dissipate probable cause." *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th

8

Cir. 1988)). He did none of those things. Instead, Rudloff arrested Plaintiff without probable cause and in retaliation for Plaintiff photographing Rudloff's breathtaking arrest of four protesters in the space of approximately one minute. Plaintiff is not asking for perfection; he is asking for reasonableness. Rudloff did not show him that when he arrested Plaintiff on May 30, 2020. *See also Adelman v. Dallas Area Rapid Transit*, No. 3:16-CV-2579-S, 2018 WL 3520426, at \*5 (N.D. Tex. July 20, 2018 (fact issue on officer's reasonableness precluded summary judgment), *aff'd sub nom. Adelman v. Branch*, 784 F. App'x 261, 266-67 (5th Cir. 2019).

      b.  <u>Defendant Lacked Probable Cause to Arrest Plaintiff for Riot Participation.</u>

Nor would a reasonable officer have believed that he had probable cause to arrest Plaintiff for Riot Participation. Tex. Penal Code § 42.02. Plaintiff's video, photographic, and testimonial evidence reveals a scene that is a far cry from Defendant's description that "hundreds of people had completely shut down a major highway and were defacing vehicles." Dkt. 58 at 26. To the contrary, though it is true that protesters moved into the northbound traffic lanes of I-35 and impeded vehicle traffic, there is no video or photographic evidence in the record supporting Defendant's, Barrett's, and Pillar's verbatim recollections of mass violence and lawlessness amongst the group.

The Officer Declarations are not credible on this point as well, and should be accorded little weight. Each declaration provides identical, word-for-word reproductions of the alleged violence and lawlessness on the scene that day, which—along with the many other factual inconsistencies contained within them—raises doubts about their trustworthiness. *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760 n.1 (N.D. Tex. 2013) ("The fact that the Declarations contain virtually identical assertions goes to their weight and credibility[.]") (citing *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 63 (E.D.N.Y. 2012) ("conclusory or cookie-cutter statements

… go to the credibility of the declarants and, by extension, the weight of the evidence")). All three declarants state:

> "On the way to the scene, I witnessed what appeared to be hundreds of individuals blocking I-35 North. We could see these individuals on the freeway defacing vehicles, such as breaking vehicle windows and spray-painting multiple vehicles."

Dkt. 51-1 at 1 (Rudloff Declaration), 4 (Barrett Declaration), 7 (Pillar Declaration). These officers do not say where precisely on I-35 North they observed these acts of vandalism occurring and whether they observed these acts at the same location as the portion of the highway they responded to.[3] Likewise, the officers reproduce the same cookie-cutter narrative about the violence on the highway when they arrived:

> "We began moving east towards the group of individuals who were on the freeway to get them off the freeway and to stop them from damaging vehicles, as well as to prevent potential violence. Many within the group on the freeway began throwing rocks, shaking cars, glass bottles, full water bottles, and other items at our group. Individuals within the group were shouting insults, like 'Fuck the police' and 'fuck 12.' These bottles and rocks began hitting at our feet and going over our heads."

Dkt. 51-1 at 1 (Rudloff Declaration), 4 (Barrett Declaration) (omitting "shaking cars" and "fuck 12"), 7 (Pillar Declaration) (omitting "shaking cars").

Plaintiff's video and photographic evidence does not align with the Officer Declarants' recollections. As Plaintiff previously explained, from his vantage point and during the short time that he observed the protesters on the highway, he did not observe any violence or vandalism. If he had, he would have attempted to capture it with his camera. The video evidence he provided

---

[3] Video evidence produced by Defendant also calls into question these recollections. Body cam footage of an officer who was part of Rudloff's team shows Rudloff and others crossing a different section of I-35 nearly a mile away at Continental Avenue, prior to their encounter near Reunion Boulevard. There, protesters cannot be observed engaged in the kind of widespread violence the Officer Declarants' attempt to depict and, in fact, it is Sgt. Rudloff who appears to instigate violence by firing his pepperball weapon down into a crowd in apparent response to an expletive from a protester. Dkt. 46 at 11-12.

appears to confirm that, while protesters certainly obstructed the road for several minutes, the group on the roadway did not collectively engage in mass violence or conduct resembling a riot. So even if it is undisputed that the officers had probable cause to arrest those within their view who they personally witnessed obstructing a roadway, the Officer Declarants' verbatim recollections fall short of establishing the riotous conditions that Defendant alleges gave him probable cause to arrest Plaintiff.

And like his Obstruction of a Roadway argument, Defendant still cannot offer particularized facts that Plaintiff participated in this allegedly riotous behavior. Instead, he relies on Plaintiff's proximity to this group, and the false narrative of Sgt. Transou—whom Plaintiff has already shown testified to seeing Plaintiff engage in the allegedly riotous conduct nearly a mile away from where he was arrested, and approximately ninety minutes after he had already been taken into custody. Dkt. 56 at 22-25.

Because of his thin argument, Defendant posits a capacious (and dangerous) theory of law enforcement power in the context of protests and other First Amendment-protected activity: that police have "significant leeway to effectuate arrests in restoring order." Dkt. 58 at 27. That gets the requirements of the Fourth Amendment exactly wrong—police cannot effectuate an arrest to restore order; they must at all times have probable cause to arrest a person that is rooted in particularized facts showing some probability that the individual they arrested committed a criminal offense. *See Imani*, 614 F. Supp. 3d at 361-62; *Davidson*, 848 F.3d at 391.

The cases Defendant quotes from stand for nothing less. In *Winston v. City of Shreveport*, 390 F. App'x 379 (5th Cir. 2010)—which involved a "riot type situation" at a local night club where the club's occupancy had exceeded its capacity and police ordered a group gathered outside the club to disperse for more than thirty minutes, *id.* at 381—the Court concluded probable cause

existed to arrest the plaintiff there because an order to disperse had been given and the plaintiff in deposition testimony acknowledged hearing the arresting officer's order and not doing so. *Id.* at 384. And in *Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686 (5th Cir. Apr. 20, 2023), as Defendant's chosen quotation makes clear, officers showed facts particularized to the arrestee there that she had disobeyed officer directives and showed physical resistance before and after the arresting officer made contact with her. *Id.* at *10.

Neither of these cases or their underlying holdings apply to Plaintiff's conduct here; nor do they support Defendant's claim—which is unmoored from the Fourth Amendment—that he could lawfully arrest Plaintiff because of Plaintiff's proximity to a (allegedly and disputedly) riotous scene in order to "restor[e] order." Dkt. 58 at 27. Defendant has offered no facts particularized to Plaintiff that support more than a "bare suspicion"—based on nothing more than Plaintiff's proximity to the scene and the conclusory and untrustworthy allegation that Defendant saw him on the highway—that a crime was committed. *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999); *see Davidson*, 848 F.3d at 392-93 (officers lacked personal, particularized knowledge that Davidson had obstructed a roadway or committed any other offense).

Also apparently lost on Defendant are the other pertinent indicators that should have given him clear warning that he lacked probable cause to arrest Plaintiff; to wit, the visual and oral indicators he was a member of the press; the fact that he was arrested on the grassy area adjacent to the highway in apparent compliance with any dispersal order that had been given; the (undisputed) fact that he only stepped onto the improved shoulder for approximately a minute for his own safety; and the fact that he maintained physical distance from groups of protesters and police while documenting their actions. A reasonable officer would have concluded on these facts that he lacked probable cause to arrest Plaintiff for Riot Participation because, setting aside the

12

factual dispute over whether riotous conduct actually occurred on the highway, it was still clear Plaintiff did not join in the "assemblage" of these individuals. *See* Dkt. 56 at 38-40; *Hirschi v. State*, 683 S.W.2d 415, 418 (Tex. Crim. App. 1984) (en banc) (requiring the "actor participate with those assembled"). For those reasons, Defendant lacked probable cause to arrest Plaintiff.

### III.    The Summary Judgment Record Permits an Inference that Defendant was Substantially Motivated Against the Exercise of Plaintiff's First Amendment Right to Record the Police in the Public Exercise of their Official Duties.

Defendant's Response reproduces nearly in its entirety his argument against Plaintiff's First Amendment Retaliation Claim from his own Motion. *Compare* Dkt. 50 at 31-37 *with* Dkt. 58 at 30-36. For the same reasons described in Plaintiff's Response to Defendant's Motion, Dkt. 56 at 42-49, Plaintiff's Retaliation Claim should proceed. Defendant also resists Plaintiff's assertions that Rudloff's actions were motivated by retaliatory animus towards Plaintiff's exercise of his right to record the police in the public exercise of their official duties. *See Turner v. Lt. Driver*, 848 F.3d 678, 688 (5th Cir. 2017).

Plaintiff must establish that he was (1) engaged in constitutionally protected activity, (2) that Defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that Defendant's adverse actions "were substantially motivated against [Plaintiff's] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). For the reasons stated in his Motion, which Defendant does not dispute, Plaintiff has met the first two elements. *See* Dkt. 46 at 25-30.

To briefly review Plaintiff's evidence on the third element, the summary judgment record shows that in the space of approximately one minute, Sgt. Rudloff arrested at least four protesters and used startling force on two of them—shooting one with his pepperball gun at point blank range, and kneeing another and forcing him to the ground. Plaintiff captured all of this on film,

13

moving around the scene from a safe distance and following Rudloff with his camera. Once Defendant completed these other arrests, Defendant acted quickly to arrest Plaintiff as well in apparent response to Plaintiff documenting his actions. Plaintiff's professional-grade cameras and press badge were visible, and as Sgt. Rudloff approached to arrest him, Plaintiff held his hands up, exclaimed that he was a member of the press, and attempted to show Sgt. Rudloff his press badge. Defendant acknowledged, but explicitly disregarded, Plaintiff's claim of press status, responding "yeah, yeah, press, press." He then placed his hands on Plaintiff, grabbed Plaintiff's shirt, and threw him to the ground, where another officer—Cpl. Pillar—moved in to handcuff him. As Defendant arrested Plaintiff, Plaintiff's witness Seipp recalled Rudloff threatening him and another journalist with arrest, too, which caused them to withdraw from the scene and move away.[4] Dkt. 46 at 15-17; Dkt. 56 at 10.

Against this backdrop, Defendant is correct that whether his actions in arresting Plaintiff were substantially motivated against the exercise of Plaintiff's constitutional rights should be gauged from an objective lens. Dkt. 58 at 40; *see also Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996) (noting "summary judgment is rarely proper when an issue of intent is involved"). And from that lens, the totality of the circumstances objectively show that Rudloff arrested Plaintiff *because* Plaintiff had his camera lens trained upon Rudloff. Indeed, it is "reasonable to assume (at this stage of the litigation)" that because Defendant arrested Plaintiff mere moments after Defendant realized Plaintiff had filmed him engaging in unprofessional and

---

[4] Bodycam footage showing Rudloff fire six shots from his pepperball weapon down at a crowd in apparent response to an expletive from a protester also tends to show that Sgt. Rudloff approached the crowd on I-35E with a pre-existing animus towards the protesters in general. Dkt. 46 at 11-12. *See Brooks v. City of West Point, Miss.*, 639 F. App'x 986, 989 (5th Cir. 2016) (denying qualified immunity where jury could conclude that officer who arrested plaintiff for cursing at him was substantially motivated against his exercise of protected speech).

potentially unlawful conduct—conduct that, if publicized, could be personally and professionally "damaging"—"there is sufficient evidence that the defendants' actions were substantially motivated as a response to [Plaintiff's] exercise of protected conduct." *Keenan*, 290 F.3d at 261.

Defendant's argument against Plaintiff's showing of substantial motivation can be summarized as follows: (1) Plaintiff was arrested at the same time as others; (2) Defendant was not required to verify whether Plaintiff was a journalist; and (3) Rudloff's verbal threats directed towards two other journalists somehow cut against Plaintiff, not Defendant. Each of these arguments deserves little oxygen. Dkt. 58 at 30-36.

*First*, it does not matter whether Plaintiff was arrested alone or with one-hundred other people; Plaintiff's summary judgment evidence has shown Sgt. Rudloff acted with substantial motivation against the exercise of Plaintiff's rights *specifically*, particularly because Rudloff only waited to arrest Plaintiff *after* he had arrested these others, *after* he used force against two of them, and *after* he realized Plaintiff had caught it all on film. *Second*, Defendant's audacious claim that he was not "required to adjudicate in the field individuals' claims of journalist status, even if they have tags on their belts and claim to be journalists," *id.* at 38, defies both well-established Fifth Circuit law and the explicit and implicit duties imposed on him by Dallas Police Department's own Press Relations policy. *See Evett*, 330 F.3d at 688 (Sgt. Rudloff cannot "disregard facts that tending to dissipate probable cause"); Dkt. 47-4 at 18 (Pl. App'x 91, § 323.01(C)) ("Officers will not restrict movement of newspersons, unless their actions clearly and directly interfere with police operations or investigations."); *Adelman v. Branch*, 784 F. App'x 261, 266-67 (5th Cir. 2019) (officer constrained by department policy to permit photographers to take pictures as long as they do not interfere, lacked probable cause to arrest plaintiff for trespass because she lacked authority

15

under the policy to order photographer to leave).[5] *Third*, Defendant's remarkably misleading assertion that Plaintiff's story "has now changed" should not be countenanced. As Plaintiff has maintained from the beginning, he was the only journalist *arrested* at the scene, and Sgt. Rudloff offers nothing to respond to the substance of Seipp's recollection: that Rudloff threatened him and Fox as well—a fact which also tends to show Rudloff's discriminatory animus towards the journalists there who were exercising their fundamental newsgathering rights.

### IV. Plaintiff's Malicious Prosecution Claim Should Proceed if the Court Finds Defendant Lacked Probable Cause to Arrest Plaintiff.

Finally, Defendant also reproduces his arguments against Plaintiff's Malicious Prosecution claim in his Response. For the reasons stated in Plaintiff's Motion, Dkt. 46 at 30-32, and his Response, Dkt. 46 at 49-51, Plaintiff is entitled to summary judgment on this claim as well. Indeed, if the Court finds Defendant lacked probable cause to arrest Plaintiff, Defendant has offered no substantive response to Plaintiff's argument that he meets the elements of the claim. Defendant alternatively falls back on his factually false claim that Plaintiff sued the wrong defendant. As Plaintiff explained, Sgt. Rudloff is Plaintiff's true arresting officer because he laid hands on Plaintiff and ordered his arrest, after which Cpl. Pillar handcuffed him. Neither Officer Thomas Hoffman, mor Sgt. Transou were ever on the scene or witnessed any of the events pertaining to Plaintiff's arrest, and Chief Thomas Castro, even if he issued a general arrest order, did not initiate the criminal prosecution against Plaintiff specifically.

---

[5] *See* Pl. App'x 91-92, § 323.01(B) ("[T]he mere presence of a newsperson, *the taking of pictures*, or the asking of questions does not constitute unlawful interference.") (emphasis added); *id.* § 323.02(B) ("In no case will members of the media be denied access to areas where the public is allowed to be present."); *id.* § 323.02(A) ("On more routine incidents where no Command Post is established, *the ranking officer* will not unduly restrict the movement of members of the media.") (emphasis added); *id.* § 323.06(A) ("Pictures may be taken in or from any area to which media members have been granted access."); *id.* § 323.06(B) ("Officers will not interfere with a photographer taking a picture of a prisoner.").

V.      **Conclusion**

Sgt. Rudloff had no particularized knowledge of Plaintiff's conduct on May 30, 2020 that remotely lent to a finding of probable cause to arrest him that day. His Response does not disagree with, or even meaningfully resist, that simple fact. Instead, he asks for a judicial pass from the Fourth Amendment's requirement of probable cause because without it, the only factual detail he and his fellow officers can offer about Plaintiff that day is the most conclusory of claims that they saw him on the highway. A reasonable officer under the circumstances would not have arrested Plaintiff acting on that information alone.

Sgt. Rudloff is therefore not entitled to qualified immunity on Plaintiff's False Arrest and Malicious Prosecution claims. Nor is he entitled to qualified immunity on Plaintiff's First Amendment Retaliation claim, because Plaintiff has provided an undisputed summary judgment record permitting an inference that Sgt. Rudloff was substantially motivated by a desire to arrest him for capturing Rudloff on camera arresting four protesters, and using force against two of them.

The Court should grant Plaintiff's motion, and deny Defendant's motion.

Dated: June 30, 2023

*/s/ David W. Henderson*
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
J. Sebastian Van Coevorden
Texas State Bar No. 24128101
svancoevorden@equalrights.law
**ELLWANGER LAW LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, TX 75208
Telephone: (469) 998-6775
Facsimile: (469) 998-6775

Respectfully Submitted,

*/s/ Thomas S. Leatherbury*
Thomas S. Leatherbury
Texas State Bar No. 12095275
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 N. Akard Street
Dallas, Texas 75201
tom@tsleatherburylaw.com
Telephone: (214) 213-5004

*/s/ Peter B. Steffensen*
Peter B. Steffensen
Texas State Bar No. 24106464
psteffensen@smu.edu
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, TX 75275
Telephone: (214) 768-4077
Facsimile: (214) 768-1611

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Peter B. Steffensen*
Peter B. Steffensen